EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>        Peticionario<br><br>        v.<br><br>Edward Amador Rodríguez<br>        Recurrido | Certiorari<br><br>2000 TSPR 98 |

Número del Caso: CE-1993-0140

Fecha: 27/junio/2000

Tribunal de Circuito de Apelaciones: Sección Norte

Juez Ponente: Hon. Ramón Negrón Soto

Oficina del Procurador General:

> Lcdo. Ricardo E. Alegría Pons
> Procurador General Auxiliar

Abogado de la Parte Recurrida:

> Lcdo. Joaquín Monserrate Matienzo

Materia: Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                    CE-93-140    Certiorari

Edward Amador Rodríguez

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 27 de junio de 2000

I

Héctor E. Domenech, Inspector del Departamento de Hacienda –desempeñándose como agente de arbitrios en los predios de la compañía privada Federal Express-,[1] decidió examinar un paquete porque de su manifiesto el remitente señalaba que su contenido era un brazalete y una cadena con valor total de $10.00. Le pareció insólito el valor informado. El paquete estaba dirigido a Charlie Molina. Al abrirlo encontró varios paquetes que contenían marihuana.

---

[1] Entidad dedicada al transporte de correspondencia y paquetes en el comercio interestatal.

Entonces procedió a cerrarlo e informar a su supervisor, quien llamó a la Policía. El agente Medal Díaz, de la División de Drogas, acudió al lugar y reabrió el paquete. Ese día, dicho agente se lo llevó a su oficina porque Federal Express no pudo conseguir una guagua suya para entregarlo.

Tres días después, el agente Medal en un vehículo oficial de Federal Express y vistiendo un uniforme de la compañía –fingiendo ser empleado–, le entregó el paquete a Eduardo Amador, quien le aceptó ser Charlie Molina. Minutos después, lo arrestó por posesión de marihuana con intención de distribuirla. Inmediatamente Amador adujo que no era Charlie Molina y tiró el paquete al suelo.

Luego de la vista preliminar, en la vista en su fondo, Amador solicitó sin éxito la supresión de evidencia (marihuana), fundado en que fue producto de un registro ilegal por los agentes del Departamento de Hacienda y de la Policía.

Eventualmente fue hallado culpable por tribunal de derecho de infracción al Art. 404 de la Ley de Sustancias Controladas. En apelación el Tribunal de Circuito de Apelaciones (Hons. Negrón Soto, Alfonso de Cumpiano y Brau Ramírez) acogió su planteamiento y revocó.

A solicitud del Procurador General revisamos.[2]

---

[2] Discute el siguiente señalamiento:

Incurrió en error el Honorable Tribunal de Apelaciones al resolver que el convicto apelante fue objeto de un registro irrazonable.

II

El Tribunal de Apelaciones delimitó la controversia a examinar si: (1) el acusado tenía una expectativa razonable de intimidad en el paquete cerrado enviado a través de un servicio de correo privado; y (2) si la autorización concedida al Secretario de Hacienda y sus delegados administrativos bajo la Ley de Arbitrios de abrir e inspeccionar el paquete bajo las circunstancias en particular del caso de autos, infringió su interés o expectativa razonable de intimidad.

En Puerto Rico la norma general —conforme a la Sección 10 del Art. II de nuestra Constitución—, es que todo registro, allanamiento o incautación que se realice sin orden judicial previa es irrazonable per se. E.L.A. v. Coca Cola, 115 D.P.R. 197 (1984). Esta norma también aplica a los registros administrativos.

La Ley de Procedimiento Administrativo Uniforme, en su sección 6.1, 3 L.P.R.A. sec. 2191, dispone así las situaciones en donde una agencia puede realizar inspecciones para hacer cumplir sus reglamentos y resoluciones sin la expedición de una orden de registro y allanamiento:

> "(a) En casos de emergencias, o que afecten la seguridad o salud pública;
>
> (b) al amparo de las facultades de licenciamiento, concesión de franquicias, permisos u otras similares;
>
> (c) en casos en que la información es obtenible a simple vista o en sitios públicos por mera observación."

El Tribunal de Apelaciones, citando a <u>Cámara</u> v. <u>Municipal Court</u>, 387 U.S. 523 (1967), señaló que para examinar la validez de un registro administrativo sin orden previa era necesario: (1) la existencia de un interés público significativo que el Estado quiere proteger; (2) la intrusión sea mínima; (3) el propósito del registro administrativo sin orden no sea descubrir un crimen; y (4) requerir una orden de registro contrarrestaría y haría impráctica la protección del interés público que se persigue.

A base de ese análisis el foro apelativo concluyó que **existía una expectativa de privacidad en el paquete enviado**: estaba completamente sellado, su contenido no estaba a simple vista, tanto el remitente como el consignatario no esperaban que ninguna persona examinara su contenido. <u>U.S.</u> v. <u>Jacobsen</u>, 466 U.S. 109, 114 (1984). Por el mero hecho de haber encontrado evidencia delictiva no puede considerarse el registro sin orden judicial como razonable. <u>U.S.</u> v. <u>Jacobsen</u>, <u>supra</u>.

Luego de determinar que existía una expectativa razonable de privacidad en el paquete enviado, el Tribunal de Circuito evaluó la validez del registro. Concluyó que aunque la Ley Núm. 5 de 8 de octubre de 1987 **-conocida como la Ley de Arbitrios-**,[3] faculta al Secretario de Hacienda a realizar inspecciones y exámenes

---

[3] 13 L.P.R.A. 7001.

administrativos, no dispone expresamente que se realice la inspección y registro **sin orden judicial previa.**

Además, **el Tribunal de Apelaciones concluyó** que la referida Ley de Arbitrios impone un arbitrio a la transacción o venta al detal de joyería, no sobre el artículo como tal. Indicó que, en el caso de autos, no se consintió el registro ni existían circunstancias de emergencia que requieran una solución distinta por el peso de los intereses en conflicto. **Concluyó que el Inspector de Hacienda debió obtener una orden judicial previa de registro.**

### III

Evaluados los planteamientos y argumentos del Procurador General y los expuestos por el recurrido Amador en oposición, con vista al criterio mayoritario convergente –aunque por fundamentos distintos y pluralistas–, **se confirma la Sentencia del Tribunal de Circuito de Apelaciones que decretó ilegal el registro del paquete y suprimió la evidencia.**

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión Concurrente a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río; el Juez Asociado señor Rebollo López emitió Opinión Concurrente; la Jueza Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton

concurren en el resultado sin opinión escrita; y el Juez

Asociado señor Fuster Berlingeri no intervino.


                                        Isabel Llompart Zeno
                                   Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

                              CE-93-140    Certiorari

      v.

Edward Amador Rodríguez

    Recurrido


Opinión Concurrente del Juez Asociado señor Negrón García a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río


San Juan, Puerto Rico, a 27 de junio de 2000

I

Para darle plena vigencia al poder contributivo impositivo –Art. VI, Sec. 2 de nuestra Constitución– la Asamblea Legislativa a través de la Ley de Arbitrios de 1987,[4] facultó al Secretario de Hacienda a examinar **documentos**, récords, **bienes**, locales, predios, **o cualquier artículo sujeto a tributación**. En el descargo de esta facultad administrativa y para fiscalizar la voluminosa

---

[4] Ley Núm. 5 de 8 de octubre de 1987, 13 L.P.R.A. sec. 7351, vigente y aplicable a los hechos ante nos. Esta ley fue derogada por la Núm. 120 de 31 de octubre de 1994, que le concede al Secretario, idénticas facultades a las otorgadas por la ley anterior. 13 L.P.R.A. 8140.

mercancía y miles de artículos tributables que llegan a nuestra isla del exterior, el Secretario promulgó el Reglamento Núm. 1 para la Administración y Aplicación de la Ley de Arbitrios.[5]

Su Art. 6.001 impone al consignatario el deber de declarar en **el manifiesto la cantidad y valor de los artículos** introducidos. Cuando se le requiera, permitirá que los agentes de arbitrios examinen los artículos recibidos o practiquen un inventario de los mismos. También, cuando a juicio de tales funcionarios sea necesario verificar la declaración de artículos, **el consignatario permitirá su examen.**

Para implementar estas disposiciones el Departamento de Hacienda diseñó un Procedimiento de Inspección,[6] que pragmáticamente reconoce el carácter de intimidad[7] que poseen las mercancías y paquetes, y a la par le permite realizar su labor impositiva fiscal. Cuando un paquete es seleccionado y marcado para inspección, exige que el agente de arbitrios informe y comunique al consignatario su intención de realizarla y obtenga su firma en el Aviso de Inspección. Este Aviso informa que la mercancía ha sido seleccionada para inspección y no puede ser entregada por la compañía porteadora sin haberse marcado para levante por el personal autorizado. Así también, dicho Aviso establece que la inspección se realizará en los predios del consignatario y/o porteadora, y que el consignatario o su representante tiene derecho a estar presente.

Durante el proceso de inspección, el agente anotará la hora de su llegada al lugar y el tipo de inspección que realizará. Corroborará el contenido del paquete contra los artículos registrados en el manifiesto. Registrará toda discrepancia e informará al consignatario

---

[5] Departamento de Hacienda, Negociado de Arbitrios del 15 de abril de 1989.

[6] Departamento de Hacienda, Área de Rentas Internas y Recaudaciones, Negociado de Arbitrios, del 30 de noviembre de 1989.

[7] El Tribunal Supremo Federal resolvió que existe expectativa a la intimidad sobre las cartas y paquetes sellados, enviados a través del correo estatal o mediante los servicios de correo privado. United States v. Jacobsen, 466 U.S. 109 (1984).

que el paquete se retiene hasta que se paguen los impuestos adicionales y las penalidades.

De inicialmente no estar presente el consignatario, la inspección no se realizará. Por otro lado, de impedírsele al agente inspeccionar, el proceso se detendrá y programará para una nueva fecha la inspección. Aunque el procedimiento de inspección no lo dispone expresamente, es lógico y razonable que si la persona notificada para esta segunda inspección no acude ni realiza diligencia alguna, el Departamento de Hacienda está discrecionalmente facultado para abrir e inspeccionar el paquete a los fines de determinar el valor real de los bienes y cotejarlo contra los declarados en el manifiesto.[8]

A la luz de esta sucinta normativa, evaluemos la solución jurídica del recurso teniendo en mente que de la validez de la actuación del agente administrativo, dependerá si se suprime en este caso penal la evidencia ocupada, consistente de marihuana.

## II

Las investigaciones administrativas están sujetas a la garantía provista por el Art. II, Sec. 10 de la nuestra Constitución contra allanamientos, registros e incautaciones irrazonables. A su amparo, en E.L.A. v. Coca Cola Bottling, 115 D.P.R. 197, (1984) resolvimos que aún cuando un estatuto autorice a una agencia administrativa a realizar un registro, como regla general, será irrazonable per se de llevarse a cabo sin orden judicial previa. Esta regla prevalece, "**a menos que se consienta al registro o circunstancias de emergencia requieran lo contrario** y el peso de los intereses en conflicto, exijan una solución distinta". (Pág. 208, énfasis suplido).

El Art. 8.001 de la Ley de Arbitrios de 1987 concede al Secretario de Hacienda la facultad de examinar aquellos artículos sujetos a tributación. En el presente caso, a diferencia de Coca Cola Bottling,

---

[8] Como es sabido, no existe protección constitucional respecto a registros sobre bienes abandonados; se configura un consentimiento implícito.

*supra*, la agencia diseñó un plan administrativo dirigido a proteger el derecho a la intimidad y simultáneamente poder realizar su misión impositiva fiscal. El procedimiento de inspección preparado por el Departamento de Hacienda requiere inicialmente del consentimiento del consignatario para realizar la investigación y, además, exige su presencia o la de su representante en la inspección. Ante esta salvaguarda del derecho constitucional a la intimidad, no es necesario pues la expedición de una orden judicial para registrar aquellos artículos sujetos a tributación, ya que según el procedimiento, antes de realizarse la inspección el consignatario deberá consentir expresa o implícitamente a la misma.

III

En el caso de autos, el Sr. Héctor E. Domenech, inspector del Departamento de Hacienda, ante una posible evasión de impuestos a través del uso de correo privado, **abrió y examinó** un paquete cuyo manifiesto señalaba que contenía un brazalete y una cadena con un valor total de diez dólares ($10.00).

Ante esa incongruencia en el manifiesto, debió seleccionar el paquete para examen según el procedimiento establecido. Inexplicablemente, no lo siguió. No hay en autos prueba sobre circunstancias urgentes que requirieran justificar apartarse del mismo. Al así actuar, violó el procedimiento administrativo establecido por el propio Departamento de Hacienda que recoge satisfactoriamente la protección constitucional contra registros irrazonables y el derecho a la intimidad.

La evidencia debe suprimirse.


ANTONIO S. NEGRÓN GARCÍA<br>Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       vs.                    CE-93-140         CERTIORARI

Edward Amador Rodríguez

    Acusado-recurrido

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 27 de junio de 2000

Aun cuando concurrimos con el resultado al que se llega en la Sentencia emitida por el Tribunal en el presente caso --esto es, en que procede decretar la <u>confirmación</u> de la sentencia emitida por el Tribunal de Circuito de Apelaciones <u>suprimiendo</u> la evidencia delictiva ocupada-- <u>consideramos apropiado expresarnos por separado</u>.

En el estudio jurídico del tema de los registros, allanamientos e incautaciones hemos de apuntalar los siguientes postulados:

    1) existe en nuestra jurisdicción, así como en la jurisdicción federal, la <u>garantía constitucional</u> contra registros, allanamientos e incautaciones irrazonables;

    2) los derechos garantizados por la Constitución federal constituyen el

contenido mínimo de los derechos que deben ser observados ya que los derechos salvaguardados por nuestra Constitución, incluso, pueden ser mayores que los contenidos en la Constitución federal;

3) en aquellas situaciones donde existe una "expectativa razonable de intimidad", existe un interés constitucionalmente protegido que exige, para la validez de un registro, la expedición de una orden a esos efectos por un magistrado previa determinación de causa probable;

4) en relación con los hechos del caso hoy ante nuestra consideración, el anterior principio rige tanto en casos de envíos postales de primera clase como en relación con los envíos a través de compañías privadas de transporte;

5) es claro que dichos envíos no pueden ser abiertos ni su contenido examinado para determinar si se han violado leyes postales u otros estatutos sin el consentimiento del destinatario o previa determinación judicial de causa probable y la expedición de orden de registro;

6) los registros administrativos, ausentes circunstancias de emergencia o de apremiante interés público, no quedan validados por la existencia de autorización estatutaria al respecto; y que

7) una escueta aseveración de motivos fundados, sin expresar en qué consisten, no basta para que el magistrado expida una orden, mucho menos justificar un registro sin orden, ausentes situaciones de emergencia, consentimiento, observación a plena vista, actividad altamente reglamentada o circunstancias apremiantes de salud o seguridad pública.

Estos mandatos constitucionales ineludiblemente han de llevarnos a concluir que en el caso de autos procede decretar la exclusión de evidencia solicitada. Por otro lado, no nos es posible suscribir el criterio expuesto en la Opinión concurrente del Juez Negrón García, suscrita la misma por otros dos Jueces de este Tribunal, debido a que en la misma se equipara la incomparecencia a una "vista o procedimiento administrativo" con un abandono de evidencia. Es decir, en un caso como este, en que un agente del Estado arbitrariamente abre un paquete, sin razón legal válida alguna para ello[9], y sin orden judicial previa, estos tres integrantes del Tribunal son del criterio que no se infringió

---

[9] La razón brindada por el agente del Estado para sospechar del paquete en controversia, y abrir el mismo, es una que, incluso, no sostiene una orden de registro expedida por un magistrado. El hecho de que la tarifa pagada, por el envío del paquete fuera mayor que el valor declarado de los bienes es algo usual y corriente que no debe levantar sospecha alguna. ¿Cuántas veces una persona envía por "correo especial" un bien que tiene un gran valor sentimental para dicha persona y muy poco valor material? Ese hecho, repetimos, no constituye "motivos fundados" ni cosa que se parezca.

la garantía constitucional contra registros e incautaciones irrazonables por razón de que el destinatario alegadamente venía obligado a hacer expresa su denegatoria o consentimiento so pena de que se decrete el abandono de la propiedad y, al mismo tiempo, el abandono de su derecho constitucional a la intimidad. No podemos estar de acuerdo con dicha posición.

## II

La Ley de Arbitrios de 1987, en su Artículo 8.001[10], faculta al Secretario de Hacienda a examinar documentos, récords, bienes, locales, predios, inventarios o cualquier artículo sujeto a tributación así como a inspeccionar equipaje y artículos traídos a Puerto Rico por viajeros procedentes del exterior cuando hubiesen razones para pensar que los artículos traídos estaban sujetos al pago de arbitrios.

Ahora bien, en E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984), este Tribunal resolvió que "cuando el estatuto que autoriza una inspección no prescribe el procedimiento para realizarla, las reglas restrictivas que normalmente impone la garantía contra los allanamientos, registros e incautaciones irrazonables tienen, a fortiori, que aplicarse". En consecuencia, aun cuando la Ley de Arbitrios conceda al Secretario de Hacienda facultad para inspeccionar cualquier artículo sujeto a tributación, como el paquete enviado en el caso de autos, esa potestad está sometida al cumplimiento de los reglamentos aplicables y, como mínimo, a la normativa aplicable en materia de registros y allanamientos.

Tal como hemos reiterado, conforme las disposiciones de la Sección 10 del Artículo II de nuestra Constitución, todo registro, allanamiento o incautación realizado sin orden judicial previa se presume irrazonable. Esta norma es aplicable tanto a los registros administrativos como a los penales. Sabido es, sin embargo, que nuestra jurisprudencia ha establecido unas excepciones a esta regla

---

[10] Ley Núm. 5 de 8 de octubre de 1987, 13 L.P.R.A. sec. 7351. Esta ley fue derogada por la Ley Núm. 120 de 31 de octubre de 1994, conocida como la Ley Habilitadora de la Reforma Contributiva de 1994, 13 L.P.R.A. secs. 8001 et seq. El Artículo 6140 del Código de Rentas Internas de 1994, 13 L.P.R.A. sec. 8140, concede al Secretario de Hacienda las mismas facultades que le otorgaba el Artículo 8.001 de la Ley de Arbitrios de 1987, 13 L.P.R.A. sec. 7351.

**general** que permiten que un registro sin orden judicial sea válido y razonable.

Específicamente, para el ámbito penal se han establecido las siguientes: (1) el registro consentido, véanse: <u>Pueblo</u> v. <u>Acevedo</u>, 112 D.P.R. 770 (1982), <u>Pueblo</u> v. <u>Narváez</u>, 121 D.P.R. 429 (1988); (2) el registro incidental a un arresto legal, véanse: <u>Pueblo</u> v. <u>Dolce</u>, 105 D.P.R. 422 (1976); <u>Pueblo</u> v. <u>Acevedo</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Gerardino</u>, 113 D.P.R. 684 (1982); <u>Pueblo</u> v. <u>Conde</u>, 115 D.P.R. 307 (1984); <u>Pueblo</u> v. <u>Zayas</u>, 120 D.P.R. 158 (1987); <u>Pueblo</u> v. <u>Pacheco Báez</u>, Opinión y Sentencia de 8 de junio de 1992 y <u>Pueblo</u> v. <u>Cruz Torres</u>, Opinión y Sentencia de 14 de septiembre de 1994; (3) el registro tipo inventario, véase: <u>Pueblo</u> v. <u>Rodríguez Serrano</u>, Opinión y Sentencia de 20 de mayo de 1991; (4) el registro de objetos abandonados o arrojados, véanse: <u>Pueblo</u> v. <u>Llanos</u>, 97 D.P.R. 95 (1969); <u>Pueblo</u> v. <u>González</u>, 102 D.P.R. 374 (1974); <u>Pueblo en interés de A.L.R.G.</u>, Opinión y Sentencia de 16 de marzo de 1993 y <u>Pueblo</u> v. <u>Castro</u>, 125 D.P.R. 159 (1990); (5) el registro de evidencia a plena vista, véanse: <u>Pueblo</u> v. <u>Dolce</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Espinet</u>, 112 D.P.R. 531 (1982); <u>Pueblo</u> v. <u>González</u>, 102 D.P.R. 374 (1974) y <u>Pueblo</u> v. <u>Lebrón</u>, 108 D.P.R. 324 (1979); (6) el registro realizado en circunstancias de emergencia o extraordinarias que justifican el registro, véanse: <u>Pueblo</u> v. <u>Nieves</u>, 101 D.P.R. 263 (1973) y <u>Pueblo</u> v. <u>Rivera</u>, 122 D.P.R. 408 (1988); (7) el registro de vehículos o individuos que cruzan la frontera para entrar a Puerto Rico o a Estados Unidos desde el extranjero, véase: <u>Pueblo</u> v. <u>Torres</u>, 106 D.P.R. 588 (1977); (8) el registro realizado en aeropuertos o muelles para confiscar productos declarados en cuarentena por el Departamento de Agricultura Federal, véase: <u>Marshall</u> v. <u>Barlows</u>, 436 U.S. 307.; y (9) el registro de estructuras abandonadas, véase: <u>Pueblo</u> v. <u>Erausquín Martínez</u>, 96 D.P.R. 1 (1968).

Además, <u>y en relación con el campo administrativo</u>, la Sección 6.1 de la Ley de Procedimiento Adminstrativo Uniforme, 3 L.P.R.A. sec. 2191, ha previsto cuáles son los casos en que una agencia administrativa podrá realizar válidamente inspecciones sin previa orden de registro o allanamiento; éstos son:

> "(a) En casos de emergencias, o que afecten la seguridad o salud pública;
>
> (b) al amparo de las facultades de licenciamiento, concesión de franquicias, permisos u otras similares;
>
> (c) en casos en que la información es obtenible a simple vista o en sitios públicos por mera observación." 3 L.P.R.A. sec. 2191.

Resulta evidente que los hechos del caso de autos no caen bajo ninguna de las excepciones a la regla general de invalidez de los registros realizados sin orden judicial previa que hemos enumerado.

El paquete registrado en el caso de autos estaba completamente sellado de forma que su contenido no era visible por las personas que lo tuvieran en su posesión.  De este hecho se puede razonablemente colegir que tanto el remitente como el consignatario deseaban mantener tal contenido dentro de su expectativa de intimidad. Sobre esta cuestión, se ha pronunciado el Tribunal Supremo Federal estableciendo que las cartas y paquetes sellados enviados, no sólo a través del correo estatal sino también mediante los servicios de correo privados, están dentro de los objetos sobre los que un individuo tiene una legítima expectativa de intimidad. United States v. Jacobsen, 466 U.S. 109 (1984); United States v. Van Leeuwen, 397 U.S. 249 (1970).

Por otro lado, nos enfrentamos al hecho de que, en aras de poner en vigor la autorización legislativa para registrar supuesta propiedad tributable, el Departamento de Hacienda promulgó un procedimiento de inspección[11], según el cual cuando un paquete que es importado al País es seleccionado y marcado para inspección, el agente de arbitrios está obligado a informar al consignatario su intención de realizar la misma y debe obtener su firma en el aviso  de inspección.

Mediante ese aviso se le informa al consignatario que la mercancía ha sido seleccionada para inspección y no puede ser entregada por la compañía porteadora sin haberse marcado para levante por el personal autorizado. Se informará, además, que la inspección se realizará en los predios del consignatario y/o porteador, y que el consignatario o su representante tienen derecho a estar presente. En dicho aviso de inspección se le informará al consignatario que la mercancía seleccionada para inspección no puede ser abierta sin presencia de un Agente de Rentas Internas para fiscalizar la descarga y el contenido.

_____

De igual forma, con el aviso de inspección se informarán al consignatario los requerimientos de inspección, que no es otra cosa que la descripción del proceso a seguir para completar debidamente con la inspección. Se aclara en dichos requerimientos que "el consignatario o su representante <u>debe</u> estar presente durante la inspección para contestar cualquier pregunta concerniente a la mercancía que se está inspeccionando" y que, el faltar al cumplimiento de cualquiera de los requerimientos podría "posponer la inspección y/o generar la imposición de penalidades administrativas." <u>Por otro lado, en el manual de Procedimientos de Inspección, se aclara que de no estar presente el consignatario, la inspección no se realizará</u>.

Ello no obstante, en la Opinión concurrente emitida en el presente caso y que suscriben tres Jueces de este Tribunal, <u>se expone y se concluye de manera innecesaria, incorrecta, y peligrosamente que</u>:

> "Aunque el procedimiento de inspección no lo dispone expresamente, es lógico y razonable que si la persona notificada para esta segunda inspección no acude ni realiza diligencia alguna, el Departamento de Hacienda está <u>discrecionalmente facultado</u> para abrir e inspeccionar el paquete a los fines de determinar el valor real de los bienes y cotejarlo contra los declarados en el manifiesto." (Énfasis suplido.)

Luego, en la nota al calce número cinco, a modo explicativo, se añade que:

> "Como es sabido, no existe protección constitucional respecto a registros sobre bienes abandonados; se configura un consentimiento implícito."

<u>Nada más incorrecto</u>. El procedimiento de inspección que nos ocupa no es otra cosa que un manual promulgado por el Secretario de Hacienda para guiar, y limitar, la conducta de los agentes en el proceso de gestionar y hacer eficaz, el <u>posible</u> consentimiento al registro por parte del destinatario del envío.[12] Es por todos conocido que una vez

---

[11] **Procedimientos de Inspección, Estado Libre Asociado de Puerto Rico, Departamento de Hacienda, Area de Rentas Internas y Recaudaciones, Negociado de Arbitrios, 30 de noviembre de 1989.**

[12] **Es necesario señalar que dicho "procedimiento" no alcanza el rango de reglamento en la medida en que no fue sometido al proceso de reglamentación establecido en la Ley de Procedimiento Administrativo Uniforme. El mismo no puede, por lo tanto, oponerse al público general de forma que**

obtenido el consentimiento, será innecesario obtener una orden judicial para el registro. Sin embargo, dicho procedimiento <u>no</u> inviste de autoridad a persona alguna para violar el derecho de intimidad del destinatario del envío. El procedimiento relativo al registro de envíos sólo da base para pedir el consentimiento del destinatario. El procedimiento, entonces, es meramente una guía aplicable a los <u>registros consentidos</u> que <u>no</u> contempla su vigencia en los casos de registros sin consentimiento o registros con orden judicial.

Debe quedar claro que un registro sin consentimiento o sin orden judicial --ausentes las demás excepciones a la regla de invalidez de registros sin orden-- es inconstitucional. <u>En caso de no obtenerse el consentimiento del destinatario, será necesaria la obtención de una orden de registro.</u> Ante la inacción del destinatario para expresar su reacción a la petición de consentimiento, <u>no procede imputarle a éste el abandono de su expectativa legítima de intimidad sobre el paquete. En abono a lo anteriormente expresado, debe enfatizarse el hecho de que en el aviso de inspección ni siquiera se le advierte al consignatario que el Departamento de Hacienda interpretará su silencio como un abandono del paquete.</u>[13]

El "envío" en el presente caso es producto de un contrato según el cual el bien ha de llegar a su destino en los términos dispuestos en el mismo. No se ha probado que en el presente caso el destinatario conviniera en rendir su expectativa legítima de intimidad <u>como condición previa al transporte del paquete</u>. La custodia del paquete fue puesta en manos de un porteador postal hasta tanto el mismo llegara a su destino. La única acción que puede esperarse del destinatario en un caso como este, luego de puesto el paquete en manos del porteador postal, es recibir el mismo. Es más, ni siquiera vendrá obligado a recibirlo, con el temor de que se entienda que ha abandonado el paquete

---

afecte sustancialmente sus derechos. Por otra parte, no está ante nos la consideración de la validez, legalidad, o constitucionalidad de la aplicación de dicho procedimiento.

[13] Expresamos esto independientemente de la inconstitucionalidad que podría tachar a dicho procedimiento.

en caso de no recibirlo, pues lo que de ordinario ocurrirá será la devolución del mismo a su remitente. No puede el porteador o un agente del Departamento de Hacienda aprovechar que tiene la posesión de un objeto, protegido por un contenedor eficientemente sellado, para requerirle al destinatario que a modo de rescate imprevisto, actúe y se oponga activamente a la concreción de una amenaza a su expectativa legítima de intimidad que nunca fue autorizada.

A modo de analogía observamos lo expresado en U.S. v. Kroll, 351 F.Supp. 148 (1972):

> "The Government has also advanced a consent theory to justify the search in this case. The theory is that the defendant knew he would be subject to a search if he attempted to board the airplane with carry-on luggage and since he did make that attempt, he consented to the search. We find that this does not constitute a consent or waiver in any meaningful sense."

Si ello es así en esa clase de situación de hechos, ciertamente no puede concluirse que la incomparecencia a la cita del agente equivale a un abandono del paquete en el presente caso.

En atención al imperioso valor del derecho constitucional a la intimidad no podemos hacer otra cosa que rechazar, de forma vehemente, el criterio expuesto en la Opinión concurrente a la que hemos hecho referencia.

Es por ello que concurrimos con la Sentencia emitida.


FRANCISCO REBOLLO LOPEZ
Juez Asociado