*78 Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Me veo obligada a disentir de la adjudicación en este caso. Contrario a la decisión a la que llega el Tribunal, confirmaría al Tribunal de Apelaciones y resolvería que los tribunales de Puerto Rico tienen jurisdicción para adjudicar la demanda en daños presentada por los familiares de un empleado que ha transigido sus reclamaciones contra el patrono ante la Junta Nacional de Relaciones del Trabajo, aun cuando dicha demanda esté fundamentada en los mismos actos discriminatorios del patrono que fueron alegados por el empleado ante esta Junta. Al revocar al Tribunal de Apelaciones, este Tribunal dificulta estas transacciones ante la Junta Nacional de Relaciones del Trabajo, pues los empleados al transigir despojarían a sus familiares de una causa de acción en daños contra el patrono. La decisión del Tribunal, además, deja desprovistos de remedios a los familiares de los empleados que decidan transigir.(1)
I
La opinión de conformidad reseña correctamente los hechos del caso. Por lo tanto, procederé directamente a la discusión de la cuestión jurisdiccional.
El Tribunal Supremo de Estados Unidos ha sostenido en numerosas ocasiones que un estado no tiene facultad para intervenir en asuntos que caen bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo. Machinists v. Wisconsin Emp. Rel. Comm’n, 427 U.S. 132 (1976); Farmer v. Carpenters, 430 U.S. 290 (1977). Esta norma de supresión de la facultad jurisdiccional {pre-emption rule) incluye *79 también a Puerto Rico. Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517 (1977). Por otra parte, la limitación de la facultad de intervención de los estados en los asuntos encargados a la jurisdicción de la Junta Nacional de Relaciones del Trabajo tiene dos vertientes. La primera se refiere a la ocupación del campo por el Congreso en cuanto al proceso legislativo de los asuntos ordenados a esta Junta. La segunda vertiente se centra en la supresión de la jurisdicción de los tribunales federales y estatales en cuanto a controversias al amparo del Labor Management Relations Act, 1947, 29 U.S.C.A. sec. 141 et seq., y del National Labor Relations Act, 29 U.S.C.A. sec. 151 et seq., de reclamaciones que incidan directamente sobre el esquema regulador de esta ley o por hechos que pudieran dar paso a una reclamación bajo la ley federal ante la Junta Nacional de Relaciones del Trabajo.
Según la primera vertiente, los estados no pueden crear legislación que repercuta directamente sobre las actividades reguladas por el Labor Management Relations Act, 1947. Los estados y Puerto Rico tienen que abstenerse de legislar en cuanto a actividades protegidas por la See. 7 del National Labor Relations Act, 29 U.S.C.A. sec. 157, o que constituyan una práctica ilícita definida en la See. 8 de la misma ley, 29 U.S.C.A. see. 158. Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180 (1978); San Diego Unions v. Garmon, 359 U.S. 236 (1959). Sin embargo, el Tribunal Supremo de Estados Unidos ha sostenido que la ley federal no le impide a los estados legislar, cuando la actividad regulada por la ley estatal sea de carácter marginal a las actividades reguladas por la ley federal o cuando la conducta regulada por el estado esté tan profundamente enraizada en áreas del interés y de la responsabilidad local que, en ausencia de una clara expresión del Congreso al contrario, no pueda inferirse que la intención congresional fue suprimir la jurisdicción estatal. San Diego Unions v. Garmon, supra; Belknap, Inc. v. Hale, 463 U.S. 491 (1983). De he *80 cho, se permite que un estado, en el ejercicio de su police power, tome medidas que incidan sobre aspectos regulados por la ley federal siempre y cuando que dichas medidas sean necesarias para mantener el orden y la seguridad pública. Farmer v. Carpenters, supra; Allen-Bradley Local v. Board, 315 U.S. 740 (1942). También, el Labor Management Relations Act, 1947 crea otras excepciones, que permiten a los estados regular ciertas conductas que afecten la legislación federal. Véase 29 U.S.C.A. sees. 164, 185 y 187. El estándar para saber si el estado puede legislar sobre un aspecto de interés laboral es si la legislación estatal interfiere con el esquema de regulación uniforme de la ley federal. Linn v. United Plant Guard Workers, 383 U.S. 53 (1966).
La segunda vertiente de la doctrina de supresión de la facultad jurisdiccional en el ámbito laboral en cuanto al Labor Management Relations Act, 1947 se refiere a la capacidad de los tribunales federales y estatales para adjudicar controversias que involucren conductas relacionadas con las prácticas ilícitas en el trabajo contenidas en la ley. Esta segunda vertiente tiene, a su vez, dos aspectos. En primer lugar se encuentra el postulado de que la Junta Nacional de Relaciones del Trabajo tiene jurisdicción ex-clusiva para atender los reclamos que surjan al amparo de la ley, en particular, las conductas protegidas por la See. 7 del National Labor Relations Act, supra, o las conductas que constituyan una práctica ilícita según la See. 8 de esta ley, supra. No obstante, los tribunales también deben abstenerse de ejercer su jurisdicción cuando pueda razonablemente presumirse que las actividades que son objeto del litigio están dentro del alcance del Labor Management Relations Act, 1947. San Diego Unions v. Garmon, supra; Marine Engineers v. Interlake Co., 370 U.S. 173 (1962). Es importante, al evaluar este asunto, señalar que la inhibición del tribunal de ejercer su jurisdicción depende del tipo de conducta implicada y no de la naturaleza del remedio *81 solicitado. Automobile Workers v. Russell, 356 U.S. 634 (1958); United Workers v. Laburnum Corp., 347 U.S. 656 (1954).
En ese análisis debe tomarse en cuenta el potencial de interferencia que la intervención judicial pueda tener con el esquema federal. Según establece la jurisprudencia federal, el criterio determinante es si la controversia que se plantea ante los tribunales es idéntica a la que se plantearía ante la Junta Nacional de Relaciones del Trabajo. Sears, Roebuck & Co. v. Carpenters, supra, pág. 196. También es importante, al igual que sucede con la ocupación de campo, sopesar el interés del estado de regular la conducta en controversia por medio de sus tribunales. Si se trata de una conducta cuya regulación o adjudicación por los tribunales está profundamente enraizada en áreas del interés y de la responsabilidad local, y no puede inferirse que la intención del Congreso fuera removerla de la esfera estatal, la intervención judicial debe prevalecer. Id. Por otro lado, el Tribunal Supremo de Estados Unidos ha establecido también que los tribunales estatales no tienen razón alguna para inhibirse de ejercitar su jurisdicción cuando la acción torticera que se lleve en el tribunal estatal no esté relacionada con la discriminación en el empleo o se base más bien en los actos del patrono mediante de los cuales se efectuó el discrimen. Farmer v. Carpenters, supra.
No se pretende con estas normas de remoción de la jurisdicción prohibir que los estados legislen o que los tribunales se queden sin jurisdicción en cuanto a toda conducta o aspecto que incida de una forma u otra sobre el contenido del Labor Management Relations Act, 1947. Farmer v. Carpenters, supra; Sears Roebuck & Co. v. Carpenters, supra. El propósito de estas normas de remoción de la jurisdicción es evitar posibles conflictos de interpretación en la aplicación y la administración de la política laboral uniforme contenida en el Labor Management Relations Act, 1947. El objetivo del Congreso es tener un solo foro que adjudique *82 de manera uniforme todo lo relativo a la legislación federal. Golden State Transit Corp. v. Los Angeles, 475 U.S. 608 (1986).
Es por esta razón que el Tribunal Supremo de Estados Unidos ha adoptado como norma el que los tribunales puedan adjudicar casos que de alguna forma repercutan sobre los intereses protegidos en el Labor Management Relations Act, 1947, siempre y cuando utilicen como referencia precedentes claros de la Junta Nacional de Relaciones del Trabajo y los apliquen a hechos que no estén en controversia. De esta forma no se viola el principio de que sea la Junta Nacional de Relaciones del Trabajo, por su peritaje, la encargada en primera instancia de determinar el significado de las regulaciones contenidas en el Labor Management Relations Act, 1947. Tampoco se da el problema de tener decisiones encontradas en cuanto a la legislación federal. Sears Roebuck & Co. v. Carpenters, supra; San Diego Unions v. Garmon, supra.
Así mismo, el Tribunal Supremo federal ha resuelto que, en tanto y en cuanto el Congreso no haya establecido un procedimiento para atender las consecuencias de una conducta torticera, se deberá aplicar el procedimiento estatal para recobrar por los daños producidos por esa conducta, aun cuando ésta pueda ser sancionada de otro modo por la Junta Nacional de Relaciones del Trabajo. United Workers v. Laburnum Corp., supra.(2) De lo contrario, se privaría a quienes han sufrido un daño del derecho a ser compensados, lo cual equivaldría a conceder inmunidad a las partes demandadas. La intención del Congreso con el Labor Management Relations Act, 1947 nunca ha sido el privar de remedios a las partes ni reducirlos, sino lo contrario. íd.; Puerto Rico Telephone v. Junta Rel. Trabajo, 86 D.P.R. 382 (1962). Por eso, el Tribunal Supremo de Estados Unidos ha reconocido que en ausencia de un remedio *83 ante la Junta Nacional de Relaciones del Trabajo no pro-cede dictaminar que los tribunales carecen de jurisdicción para adjudicar la controversia que se les plantee. Véase United Workers v. Laburnum Corp., supra.
II
A luz de la discusión que antecede, es claro que los tribunales de Puerto Rico pueden ejercitar su jurisdicción para adjudicar la controversia de este caso y que no están obligados de modo alguno a inhibirse de ejercerla. En primer lugar, la reclamación de los familiares de la señora Rodríguez que no presenta un problema según la primera vertiente de la doctrina de supresión de la facultad jurisdiccional en el ámbito laboral, ya que para resolverla no es necesario recurrir a una norma contenida en la ley federal, sino a una norma general del derecho de daños. Tampoco se trata de un asunto sobre el cual la Junta Nacional de Relaciones de Trabajo tenga jurisdicción exclusiva, puesto que quien hace la reclamación no es un empleado sino sus familiares, sobre los cuales la Junta no tiene jurisdicción alguna. Por lo tanto, nuestros cuestionamientos para decidir si los tribunales de Puerto Rico tenemos jurisdicción en este caso se deben evaluar de acuerdo con el segundo aspecto de la segunda vertiente de la doctrina de supresión de la facultad jurisdiccional en el ámbito laboral. En otras palabras, se debe determinar si puede razonablemente presumirse que las actividades que son objeto de este litigio están dentro del alcance del Labor Management Relations Act, 1947. De no ser así, los tribunales puertorriqueños no deben abstenerse de ejercer su jurisdicción.
Como señalara, aunque la reclamación de los familiares de la señora Rodríguez se fundamenta en hechos que constituyen una conducta regulada por la legislación federal, la Junta Nacional de Relaciones del Trabajo no tiene jurisdicción sobre dicha reclamación, por cuestión de las partes *84 implicadas.(3) Se trata, más bien, de una de esas situaciones en las cuales el Congreso no ha establecido un procedimiento uniforme según el Labor Management Relations Act, 1947 para dirimir las consecuencias de una conducta torticera. Aplica, por lo tanto, la norma adoptada por el Tribunal Supremo federal en el caso United Workers v. Laburnum Corp., supra, por lo cual se debe permitir que se proceda con el procedimiento estatal para recobrar por los daños alegadamente causados por esa conducta. En conclusión, al amparo de la jurisprudencia federal que interpreta la jurisdicción de la Junta Nacional de Relaciones del Trabajo, nuestros tribunales tienen jurisdicción para adjudicar la controversia que presentan los demandantes en este caso.
Por otra parte, aun si se obviara la doctrina de United Workers v. Laburnum Corp., supra, nuestros tribunales tendrían jurisdicción en este caso. La controversia que se plantea aquí no es idéntica a la que se presentaría ante la Junta Nacional de Relaciones del Trabajo. Véase Belknap, Inc. v. Hale, supra. Reiteradamente hemos reconocido que el concepto culpa, que emana de nuestro Código Civil, es tan infinitamente amplio como para incluir cualquier falta de una persona que produce un mal o un daño. Soc. de Gananciales v. El Vocero de P.R., 135 D.P.R. 122 (1994).
La opinión de conformidad enfoca la causa de acción de los demandantes como una acción por los daños alegadamente causados por una práctica ilícita en el trabajo. Por eso, estima que, para que proceda la reclamación en daños, es necesario haber prevalecido en el reclamo laboral, como en el caso de las acciones de daños por violaciones bajo la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. see. 146 et seq.). En este caso sería necesario haber prevalecido en el reclamo de discrimen por prácticas sindicales frente a la *85 Junta Nacional de Relaciones del Trabajo, lo cual, al transigirse el caso administrativo, no sucedió. Discrepo, aquí, pues el reclamo de los demandantes es en daños por alegadas violaciones a los derechos constitucionales de la señora Rodríguez por parte del Hospital Dr. Susoni y no por una práctica ilícita al amparo de la ley federal.
Los demandantes alegan que se violó el derecho de su esposa y de su madre a organizarse sindicalmente. En otras palabras, reclaman daños por la violación a la Sec. 16 del Art. II de nuestra Constitución, L.P.R.A., Tomo l.(4) A mi entender, la acción por violación al derecho constitucio *86 nal de sindicalización de los puertorriqueños no es igual a la acción de discrimen sindical estatuida en el Labor Management Relations Act, 1947. La acción del Labor Management Relations Act, 1947 es más restringida porque está claramente definida por la propia ley, mientras que la acción bajo nuestra Constitución es más amplia y puede incluir conductas no contenidas en la regulación federal.
Es evidente que la acción según nuestro derecho de daños por violación a los derechos laborales recogidos en nuestra Constitución incide sobre la regulación federal. No obstante, al sopesar los intereses de Puerto Rico en cuanto a regular por medio de sus tribunales esta conducta, nos percatamos que se trata de una conducta cuya regulación o adjudicación por los tribunales está tan profundamente enraizada en las áreas del interés y de la responsabilidad local que se colige que Puerto Rico debe ejercer su jurisdicción en este asunto. Esto, unido a que no podemos inferir una intención clara del Congreso de que la controversia que presentan las partes en este caso debe ser removida de la esfera estatal, nos lleva a concluir que nuestros tribunales pueden ejercitar su jurisdicción para solucionar la controversia que este caso les presenta. Véase Belknap, Inc. v. Hale, supra.
Por último, aun cuando se entendiera que la controversia que se nos presenta versa sobre cuestiones o incide de algún modo sobre un asunto bajo la jurisdicción de la *87 Junta Nacional de Relaciones del Trabajo, no estamos ante un caso en el cual una decisión del tribunal estatal necesariamente entorpezca el funcionamiento del esquema uniforme federal o que se corra el riesgo de interpretar el Labor Management Relations Act, 1947, de manera contraria a la forma como lo liaría la Junta Nacional de Relaciones del Trabajo. Después de todo, el Tribunal de Primera Instancia puede recurrir a los precedentes de esta Junta en caso de que tenga que hacer una determinación o interpretación a partir de la ley federal. Por otra parte, se trata de una controversia en la cual los hechos pueden quedar claramente establecidos, una vez se celebre el juicio o mediante acuerdos de las partes. Estarían presentes entonces las condiciones elaboradas por la jurisprudencia federal antes discutida para permitir la intervención de los tribunales. Así, pues, nuestros tribunales también tendrían facultad, según este fundamento, para ejercer su jurisdicción en este caso. Véanse: Sears Roebuck & Co. v. Carpenters, supra; San Diego Unions v. Garmon, supra.
Ill
De otro lado, aun si adoptáramos la premisa de que nuestros tribunales no deben ejercer su jurisdicción cuando la reclamación de daños se fundamenta en el discrimen laboral alegado, entiendo que debido a las reclamaciones y la prueba que consta en el expediente, este caso, según la doctrina de Farmer v. Carpenters, supra, no debe ser desestimado. Vimos que en Farmer, supra, el Tribunal Supremo federal sostuvo que cuando la acción torticera presentada en el tribunal estatal no esté relacionada con la discriminación en el empleo o cuando la acción se fundamente en los actos mediante los cuales se efectuó el discrimen, los tribunales estatales no tienen razón alguna para no ejercitar su jurisdicción. Farmer v. Carpenters, supra. Como mencionara, lo que está ante nuestra consideración *88 en este caso es una acción de daños por la alegada violación a los derechos constitucionales de la señora Rodríguez, por lo que los elementos de prueba son distintos a los de la reclamación laboral ante la Junta Nacional de Relaciones del Trabajo. Por otra parte, la deposición de uno de los demandantes en este caso da a entender, contrario a la conclusión de la opinión de conformidad, que los demandantes pudieran establecer una demanda por los actos en los que se expresó el discrimen y no por el discrimen en sí.(5) Por eso entiendo que, aun si aceptáramos que los tribunales puertorriqueños no deben ejercer su jurisdicción ante una reclamación fundamentada en un discrimen laboral regulado por la legislación federal, este Tribunal debió haber devuelto el caso para que el foro de instancia determinara el fundamento fáctico de la reclamación. Todo ello en consonancia con lo resuelto en el caso Farmer v. Carpenters, supra, y con nuestra normativa sobre las mociones de sentencia sumaria, que requiere que no hayan hechos esenciales en controversia antes de resolver sumariamente.
Al interpretar la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill,(6) que regula las sentencias sumarias, he-mos requerido que los tribunales de instancia sean mesurados en su uso. Además, hemos señalado que sólo lo deben hacer cuando estén totalmente convencidos de que no existen controversias sobre los hechos del caso, y que sólo resta aplicar el Derecho. Para poder tener esta seguridad en cuanto a la inexistencia de controversias de hechos, los tri *89 bunales de instancia deben considerar todos los documentos que consten en el expediente, sean parte o no de la moción de sentencia sumaria o de la oposición a ésta. Véase Vera v. Dr. Bravo, 161 D.P.R. 308 (2004); Jusino et als. v. Walgreens, 151 D.P.R. 560 (2001); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
Del texto de la regla y de nuestras expresiones en el pasado sobre este asunto se desprende que el tribunal de instancia no puede dictar sentencia sumaria cuando existan hechos materiales y esenciales en controversia, cuando haya alegaciones afirmativas en la demanda que no se hayan refutado, cuando surja de los propios documentos que se acompañan con la moción que hay una controversia real sobre algún hecho material y esencial, o cuando no proceda lo solicitado como cuestión de derecho. Vera v. Dr. Bravo, supra; Luan Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 562 (2000). Por último, si hay dudas sobre la existencia de una controversia de hechos, la moción de sentencia sumaria debe resolverse contra la parte que solicita la sentencia sumaria. De este modo, se evita despojar a una de las partes de su derecho a tener su día en corte, uno de los principios elementales del debido proceso de ley. Vélez v. García, 163 D.P.R. 223 (2004).(7)
El expediente de este caso revela que los demandantes pueden estar esbozando reclamos permitidos, aun bajo la normativa que elabora la opinión de conformidad. Las siguientes expresiones lo evidencian:(8)
P. ... en ese mismo instante del despido, ustedes, usted personalmente sabía que el despido era discriminatorio.
R. Sí. Claro, veníamos sufriendo ya porque los movimientos que estaba haciendo el Hospital Dr. Susoni hacían un taller de *90 trabajo un poco complicado para mi esposa. Y ella pues, llegaba a casa ansiosa y a contarme la situación que estaba afrontando en el trabajo.
P. ¿Usted entiende que también a raíz de ese discrimen?
R. Perdóneme.
P. O sea, que le imponían ese taller de trabajo difícil por el mismo ánimo discriminatorio, ¿eso es lo qué me está indicando?
R. Sí, porque le estaban solicitando la renuncia, le estaban solicitando la renuncia.
P. ¿Antes de despedirla? Apéndice de Solicitud de certiorari, pág. 255.
Con planteamientos como los que anteceden en el expediente, relativos a actos específicos del patrono y no únicamente al discrimen laboral alegado, este Tribunal no debió desestimar la demanda de los recurridos.
IV
Por todo lo anterior, disiento de la adjudicación del caso. Entiendo que los tribunales de Puerto Rico tienen jurisdicción para juzgar la demanda por daños de los familiares de un empleado que haya transigido sus reclamaciones por alegados actos discriminatorios de su patrono ante la Junta Nacional de Relaciones de Trabajo, aun cuando los daños sean consecuencia de los mismos hechos alegados en la reclamación laboral. Sin embargo, aun determinándose lo contrario, la reclamación de los recurridos puede estar dentro de los parámetros que el propio Tribunal Supremo federal ha establecido para que los tribunales estatales puedan ejercer su jurisdicción. Por eso también, no procede la desestimación del caso.
En conclusión, confirmaría las actuaciones del Tribunal de Primera Instancia y del Tribunal de Apelaciones, y devolvería el caso al foro de instancia para que se continúen los procedimientos.

 También resulta preocupante el impacto de la decisión de este Tribunal sobre la política que favorece que las partes resuelvan sus controversias por medio de la transacción.

 Para una discusión de este caso, véase nuestras expresiones en Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517 (1977).

 Los casos que se discuten en la opinión de conformidad se refieren a situaciones en las cuales las partes que reclamaban en el foro estatal o en el foro judicial federal estaban bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo. Éste, me reafirmo, no es el caso que tenemos ante nuestra consideración.

 Este reclamo surge claro de parte de la deposición que se le tomara a uno de los demandantes, el esposo de la señora Rodríguez. Reproducimos lo pertinente de esta deposición:

“R. Porque yo sé de propio conocimiento que una vez usas la intervención, la Unión de Empleados de la Salud, ULEES, al Hospital Susoni y ganó unas elecciones, ellos estaban haciendo movimientos estratégicas para desarticular la Unión.

“P. ¿Cómo usted sabe eso?
“R. Pues, de propio conocimiento. A mí me lo dijo personalmente el Dr. García Lloréns.
“P. ¿Cuándo le dijo eso?
“R. ¿Dónde? En una actividad en el Arecibo Country Club, actividad de Navidad del Hospital Dr. Susoni.
“P. Del 99. ¿Y por ese comentario usted entendió que el despido entonces de su esposa se debió a eso?
“R. Hablamos también, con ese comentario, no. Hablamos muy ....
“P. ¿Algún otro incidente que usted entendió que le dio a entender a usted ...?
“R. Sí, el Dr. Amoldo Matos, quien es mi amigo personal, estaba reunido también en la misma mesa y se estaba hablando de qué forma o manera se podía desarticular la Unión. Claro, lo que nunca pensé es que mi esposa iba a caer en la redada de ellos.

‘R. Perdóneme, perdóneme un segundito. Al momento del despido quien despide a mi esposa es realmente el Dr. Miguel García Lloréns, que hasta le comentó, “El viejo tuyo me va a matar”, porque son amigos. El le hace muy claro a ella que el despido que él está haciendo es con el propósito de desaparecer la Unión de Susoni.

“R. A raíz del despido sufrimos los daños que alegamos en la demanda, es correcto.
“P. Y me indico anteriormente que ...
“R. Obviamente ....
“P. ... en ese mismo instante del despido, ustedes, usted personalmente sabía que el despido era discriminatorio.

*86
“R. Sí. Claro, veníamos sufriendo ya porque los movimientos que estaba haciendo él Hospital Dr. Susoni hacían un taller de trabajo un poco complicado para mi esposa. Y ella pues, llegaba a casa ansiosa y a contarme la situación que estaba afrontando en el trabajo.

“P. ¿Usted entiende que también a raíz de ese discrimen?
“R. Perdóneme.

“P. O sea, que le imponían ese taller de trabajo difícil por él mismo ánimo discriminatorio, ¿eso es lo qué me está indicando?

“R. Sí, porque le estaban solicitando la renuncia, le estaban solicitando la renuncia.

“P. ¿Antes de despedirla?
R. Seguro.

“P. Por el mismo ánimo discriminatorio que me lleva describiendo, ¿correcto?

“R. Sí.” (Énfasis suplido). Apéndice de la Solicitud de certiorari, págs. 252-256.

 Véase el escolio 3.

 La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, provee, en lo pertinente, referente a la resolución de mociones de sentencia sumaria, lo siguiente:
"... La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interloeutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.”

 Hemos explicado también que el objetivo principal de la Regla 36.3 de Procedimiento Civil, supra, es propiciar la solución justa, rápida y económica de pleitos civiles que no presentan una controversia sustancial de hechos y para los cuales no es necesaria la celebración de un juicio en su fondo. Vera v. Dr. Bravo, 161 D.P.R. 308 (2004); Ñeca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860 (1995).

 Véase escolio 4.