EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Enrique Díaz Arroyo y otros<br><br>Recurridos<br><br>v.<br><br>Hospital Dr. Susoni, Inc.<br><br>Peticionario | Certiorari<br><br>2006 TSPR 146<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2004-499

Fecha: 21 de septiembre de 2006

Tribunal de Apelaciones:

> Región Judicial de Arecibo

Juez Ponente:

> Hon. Roberto González Rivera

Abogado de la Parte Peticionaria:

> Lcdo. Tristán Reyes Gilestra
> Lcdo. Enrique R. Padró Rodríguez
> Lcda. Monica A. Santiago Vázquez

Abogado de la Parte Recurrida:

> Lcdo. Harold E. Hopkins Jr.

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Enrique Díaz Arroyo
y otros

     Recurridos

       v.

Hospital Dr. Susoni, Inc.

     Peticionario

CC-2004-499

SENTENCIA

San Juan, Puerto Rico, a 21 de septiembre de 2006

El 1 de abril de 2002, el señor Ramón Enrique Díaz Arroyo y sus dos hijos, Raisa Alejandra y Ramón Enrique presentaron una demanda ante el Tribunal de Primera Instancia contra el Hospital Dr. Susoni, Inc., (el "Hospital" o el "peticionario") para reclamar daños y perjuicios. La demanda instada se fundamentó en que la esposa del recurrido y madre de sus dos hijos, la señora Isaira Rodríguez, fue despedida del Hospital ilegalmente y en forma discriminatoria, como resultados de su activismo sindical. Se adujo en la demanda que ello les causó daños y angustias

mentales por lo que solicitaban la correspondiente indemnización.

El Hospital contestó la demanda y posteriormente presentó una moción de sentencia sumaria. En ésta planteó, entre otras cosas, que el foro primario carecía de jurisdicción para atender esta controversia habida cuenta que, al versar la demanda sobre un reclamo de discrimen sindical, la jurisdicción exclusiva era de la Junta Nacional de Relaciones del Trabajo. Se adujo también que la demanda estaba prescrita.

Luego de varios incidentes procesales, el foro primario se negó a dictar sentencia sumariamente a favor del Hospital. El tribunal resolvió que existía controversia real en cuanto a la prescripción de la causa de acción por lo que no procedía resolver sumariamente el caso. Rechazó el planteamiento jurisdiccional y concluyó que le correspondía al tribunal dilucidar la reclamación instada al amparo del Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

Por estar inconforme con tal decisión, el Hospital acudió ante el Tribunal de Apelaciones. En su recurso planteó lo mismo que había planteado en la moción de sentencia sumaria respecto la falta de jurisdicción del foro primario por tratarse de un asunto de discrimen sindical. Específicamente alegó que la ley federal, el Labor Management Relations Act de 1947, según enmendada, 29 U.S.C. secs. 141.97 *et seq.*, ocupaba el campo.

El Tribunal de Apelaciones confirmó el foro primario. Adujo, respecto al asunto jurisdiccional, que la jurisprudencia del Tribunal Supremo de los Estados Unidos había dispuesto que los derechos de los parientes de los obreros no son un apéndice del contrato laboral ni emanan supletoriamente o de modo alguno de la legislación especial laboral, por lo que no procede acudir a ella para decidir si estos tienen determinado derecho. Por lo que la ley federal no ocupaba el campo.

Nuevamente inconforme, el Hospital Susoni compareció ante nosotros y señaló el siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL DETERMINAR QUE LOS TRIBUNALES DE PUERTO RICO POSEEN JURISDICCIÓN SOBRE LA MATERIA ANTE SU CONSIDERACIÓN DE DISCRIMEN SINDICAL, YA QUE ES LA JUNTA NACIONAL DE RELACIONES DEL TRABAJO LA QUE TIENE JURISDICCIÓN EXCLUSIVA PARA ENTENDER EN CASOS QUE ENVUELVEN UNA PRÁCTICA ILÍCITA DEL TRABAJO, INCLUYENDO CUALQUIER ASUNTO DONDE SE ALEGUE DISCRIMEN SINDICAL; JURISDICCIÓN QUE DE HECHO EJERCIÓ LA JUNTA EN EL CASO DE AUTOS, RESULTANDO EN UN ACUERDO TRANSACCIONAL FINAL Y FIRME.

Expedimos el auto solicitado. Las partes han comparecido por lo que estamos en posición de resolver y pasamos a así hacerlo.

Analizados los planteamientos de las partes así como la normativa federal aplicable se dicta sentencia y se revoca al Tribunal de Apelaciones y se desestima la demanda instada.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de conformidad a la cual se le une el Juez Presidente señor Hernández Denton. El Juez Asociado señor Rebollo López concurre con el resultado. El Juez Asociado señor Fuster Berlingeri emitió una Opinión disidente. La Juez Asociada señora Fiol Matta emitió una Opinión disidente. El Juez Rivera Pérez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Enrique Díaz Arroyo
y otros

    Recurridos

       vi.

Hospital Dr. Susoni, Inc.

    Peticionario

CC-2004-499

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une el Juez Presidente señor Hernández Denton.

San Juan, Puerto Rico a 21 de septiembre de 2006

Nos corresponde resolver si los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para atender una reclamación en daños bajo el Artículo 1802 del Código Civil instada por los familiares de una persona que, alegadamente, fue despedida de su empleo a causa de sus actividades sindicales y por lo cual había presentado ya una reclamación ante la Junta Nacional de Relaciones del Trabajo.

I

La Sra. Isaira Rodríguez trabajaba en el Hospital Dr. Susoni (el "Hospital") como tecnóloga médica

desde el año 1989 hasta su despido el 29 de marzo de 2000. Por entender que su despido se debió principalmente a su participación en actividades sindicales, la señora Rodríguez presentó una querella contra su patrono ante la Junta Nacional de Relaciones del Trabajo (la "Junta Nacional"). Instado el proceso, las partes llegaron a un acuerdo transaccional, para finiquitar la controversia.[1] En el acuerdo, el patrono no hizo admisión alguna de que su conducta constituyera un discrimen patronal bajo el "National Labor Relations Act of 1947" (el "NLRA", por sus siglas en inglés), 29 U.S.C. sec. 141 *et seq*. La Junta Nacional avaló el acuerdo sin expresión alguna sobre este aspecto.

El 1 de abril de 2002, el Sr. Ramón Enrique Díaz Arroyo, esposo de la señora Rodríguez, por sí y en representación de sus dos hijos menores de edad (la "parte recurrida" o "los recurridos"), presentó una reclamación en daños y perjuicios bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, en contra del Hospital. Reclamó, en esencia, por los daños sufridos por él y sus hijos a causa del "despido injustificado" de la señora Rodríguez.[2] Haciendo referencia a *Dorante v. Wrangler de Puerto Rico*, 145 D.P.R. 408 (2001), adujo que nuestro ordenamiento

_____

[1] Parte del acuerdo transaccional al que llegaron las partes ante la Junta Nacional de Relaciones del Trabajo consistió en la reinstalación de la empleada, señora Rodríguez, y la suma de $22,000 por concepto de haberes dejados de recibir.

[2] Apéndice, Solicitud de *certiorari*, pág. 21.

jurídico ya reconocía una causa de acción a los familiares de un empleado despedido injustificadamente.

En su contestación, el Hospital admitió que la señora Rodríguez trabajó para la institución médica durante el periodo de tiempo descrito en la demanda, sin embargo, negó que su despido obedeciese a razones discriminatorias o que fuese un despido sin causa justificada. Además, rechazó cualquier alegación relacionada con los daños sufridos por los familiares de la empleada despedida. Por último, el Hospital adujo que la reclamación de los familiares de la señora Rodríguez estaba prescrita.[3]

Como defensa afirmativa, el Hospital esgrimió en lo que nos concierne, que el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia debido a que la Junta Nacional poseía jurisdicción exclusiva en materia de prácticas ilícitas del trabajo, como lo era el discrimen sindical por el cual se reclamaba.

Trascurridos varios eventos procesales, el Hospital solicitó que se dictara sentencia sumaria a su favor. En su moción planteó nuevamente que la causa de acción estaba prescrita y reprodujo su alegación de falta de jurisdicción sobre la materia. Sobre este particular señaló que para prevalecer en la demanda instada, el tribunal venía obligado a determinar que la señora Rodríguez fue despedida a causa de sus actividades sindicales; es decir, que el

---

[3] El asunto de la alegada prescripción de la demanda instada no es objeto de revisión en este recurso por lo que no hay necesidad de expresarnos sobre el mismo.

Hospital incurrió en un acto de discrimen sindical. Y, toda vez que este era un asunto de la exclusiva competencia de la Junta Nacional, el tribunal de instancia no tenía jurisdicción para dilucidar los méritos del reclamo que pendía ante sí.

Por su parte, los recurridos se opusieron a que se dictara sentencia sumariamente debido a que existían controversias genuinas sobre hechos materiales que impedían la resolución del presente litigio de manera sumaria, específicamente, respecto al asunto de la prescripción. Sobre la alegación de falta de jurisdicción sobre la materia, la parte recurrida sostuvo que la Junta Nacional había encontrado "causa probable para entender que el Hospital Dr. Susoni había discriminado con la referida empleada."[4] Señaló dicha parte que el acuerdo transaccional se dio entre el patrono y la señora Rodríguez, mientras que en la presente acción quienes solicitaban indemnización por sus propios daños eran el esposo y los hijos de la señora Rodríguez.

Indicaron, expresamente, que el tribunal sólo tendría que evaluar la prueba para "llegar a las conclusiones en cuanto a los prejuicios (sic) sufridos, por las acciones discriminatorias que [el Artículo 1802 prohíbe]... y sobre si hubo discrimen o no en contra se (sic) la señora Isairia Rodríguez."[5] Negó específicamente que fuera "necesario determinar si hubo práctica ilícita de trabajo según la ley

---

[4] Véase Apéndice del recurso de *certiorari*, pág. 127.
[5] *Íbid*, pág. 129.

federal."[6] Los recurridos alegaron también que en la medida que su reclamo involucraba importantes derechos constitucionales, *e.g.*, expresión, libertad de asociación y "libertad de pertenecer a un sindicato u otra asociación", la ley federal no ocupaba el campo.[7]

El Tribunal de Primera Instancia dictó una resolución en la cual se negó a desestimar la demanda instada al resolver que había controversia real sobre hechos materiales respecto la alegación de prescripción que impedían la resolución sumaria del caso. Rechazó el argumento de falta de jurisdicción levantado por el Hospital y concluyó que le correspondía al tribunal dilucidar la controversia bajo el Artículo 1802 del Código Civil.

Inconforme, el Hospital recurrió al Tribunal de Apelaciones mediante recurso de *certiorari*. El foro apelativo intermedio confirmó la determinación del tribunal de instancia de asumir jurisdicción y resolvió que las leyes federales no ocupaban el campo sobre ese asunto.

En desacuerdo nuevamente, el Hospital recurrió ante este Tribunal. Nos planteó en su recurso de *certiorari* la comisión del siguiente error:

> Erró el Honorable Tribunal de Apelaciones al determinar que los Tribunales de Puerto Rico poseen jurisdicción sobre la materia ante su consideración de discrimen sindical, ya que es la Junta Nacional de Relaciones del Trabajo la que tiene jurisdicción exclusiva para entender en casos que envuelven (sic) una práctica ilícita

---

[6] *Loc. cit.*
[7] *Loc. cit.*

del trabajo, incluyendo cualquier asunto donde se alegue discrimen sindical; jurisdicción que de hecho ejerció la Junta en el caso de autos resultando en un acuerdo transaccional final y firme.

El 20 de septiembre de 2004 expedimos el presente recurso. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver la controversia aquí planteada y procedemos a expresar nuestro criterio al respecto.

II

A

Tenemos ante nuestra consideración una controversia de carácter novel. Debemos resolver si acorde a nuestros dictámenes en *Santini Rivera v. Serv. Air Inc.*, 137 D.P.R. 1 (1994), *Maldonado Rodríguez v. Banco Central*, 138 D.P.R. 268 (1995) y *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408 (1998), donde reconocimos una causa de acción en daños y perjuicios a los familiares de un empleado que había sido discriminado por su patrono en violación a la Ley Núm. 100 de 30 de junio de 1959, o había sido víctima de represalias en violación a la Sección 21 de la Ley Núm. 96 del 26 de junio de 1953, es también apropiado reconocer una causa de acción en daños cuando el acto alegadamente discriminatorio se refiere a actividades sindicales del empleado.

El peticionario sostuvo que la respuesta es en la negativa. Como ya indicamos, éste apuntó a que en la medida que para prevalecer en su causa de acción los familiares de la empleada tienen que probar que el patrono

incurrió en un discrimen sindical y, toda vez que este es un asunto de la exclusiva competencia de la Junta Nacional, los tribunales del Estado Libre Asociado de Puerto Rico no tienen jurisdicción para atender tal reclamo. El Hospital arguyó que sobre esta materia el campo está ocupado por la legislación federal.

La parte recurrida por su parte, adujo que no aplicaba la doctrina del campo ocupado, principalmente, a la luz de lo dispuesto por el Tribunal Supremo de los Estados Unidos en *United Construction Workers v. Laburnum Construction Corp.*, 345 U.S. 656 (1956). Allí se reconoció una causa de acción en daños y perjuicios contra la unión demandada al resolverse que el reclamo de daños no había quedado desplazado por la ley federal. Alegó en su consecuencia que igual resultado se imponía en este caso.

Trabada así la controversia, pasemos a analizar la misma.

B

El Congreso de los Estados Unidos aprobó la legislación que nos ocupa con el propósito de promover la paz industrial y uniformar la política laboral de los Estados Unidos de modo que se promoviera el libre flujo del comercio interestatal. La legislación federal procura proteger y garantizar los derechos de los empleados frente

a sus patronos, así como frente a las uniones, y proscribe aquellas prácticas que afecten el comercio interestatal.[8]

A través del "National Labor Relactions Act" (el "NLRA", por sus siglas en inglés), 29 U.S.C. secs. 151 *et seq.,* el Congreso pretendió proteger el derecho de los empleados a organizarse y negociar colectivamente, entre otros derechos. 29 U.S.C. sec 157. Secuela de ese reconocimiento, la ley federal prohíbe las prácticas discriminatorias e ilícitas de los patronos, así como de las organizaciones obreras, que puedan interferir con las actividades concertadas y los derechos garantizados por el NLRA a los empleados. 29 U.S.C. sec. 158.

Para implementar y velar por el cumplimiento del mandato establecido en el NLRA, la ley dispuso para la creación de la Junta Nacional de Relaciones del Trabajo. 29 U.S.C. sec. 153. El esquema reglamentario creado permitía uniformar la política laboral que estableciera el Congreso, a través de los pronunciamientos de un foro único

---

[8] La sección 141(b) del "National Labor Relations Act of 1947", ("NLRA" por sus siglas en inglés), 29 U.S.C. sec. 141(b), dispone en lo pertinente:

> It is the purpose and policies of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both the employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect rights of individual employees in their relation with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in the disputes affecting commerce.

como la Junta Nacional. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 191 (1978) ("The interest in uniform development of the new national labor policy required that matters which fell squarely within the regulatory jurisdiction of [the National Labor Relations Board] be evaluated in the first instance by that agency.") Mediante un foro único para atender los reclamos bajo el NLRA, se evita el peligro de decisiones disgregantes que afecten la uniformidad exigida por el Congreso en materia de política laboral.

El Art. 10(a) del NLRA, 29 U.S.C. sec. 160(a), le **confirió jurisdicción exclusiva a la Junta Nacional para atender reclamos que se refieran a una práctica ilícita del trabajo, como lo es el discrimen sindical.**[9] Ante este mandato, naturalmente, el Tribunal Supremo ha dispuesto que

_____

[9] Específicamente, el Art. 10(a) del "National Labor Relations Act of 1947", 29 U.S.C. sec. 1608(a), dispone, en lo pertinente, lo siguiente:

> The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided*, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.

el tema de prácticas ilícitas del patrono es uno de la exclusiva incumbencia de la Junta Nacional. Véase discusión *infra*. *E.g., Garner v. Teamsters*, 346 U.S. 485 (1953); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1958); *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983).

Reiteradamente así lo hemos reconocido. *Vargas Sepúlveda v. Molinos Nacionales, Inc.*, 134 D.P.R. 919 (1993); *Maldonado v. J.R.T.*, 132 D.P.R. 972 (1993); *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977). En *Vargas Sepúlveda, ante*, págs. 926-927, indicamos expresamente: "[E]l discrimen por afiliación sindical, como práctica ilícita del patrono, es una materia de la exclusiva jurisdicción de la Junta Nacional de Relaciones del Trabajo. Corresponde a dicha entidad --en primera instancia-- pasar juicio sobre la controversia, y sobre si existe o no una práctica ilícita del trabajo."

C

Habida cuenta de que el planteamiento de la parte peticionaria es uno de falta de jurisdicción sobre la materia en virtud de la doctrina de desplazamiento o campo ocupado, se hace necesario que abordemos la misma en mayor detalle.

La doctrina de desplazamiento en el ámbito laboral se asienta sobre la premisa de que el Congreso tuvo la intención, al aprobar el NLRA, de ocupar el campo en materia de Derecho laboral. Es decir, que regular o

reglamentar el derecho a afiliarse a una unión o negociar colectivamente, con sus respectivas permutaciones, son asuntos de "alto interés nacional" ("peculiarly national concern"), que exigen uniformidad en su reglamentación y tratamiento. L. Tribe, *American Constitutional Law*, Foundation Press, New York, 2d ed., 1988, pág. 500 n. 22 ("regulation of labor management relations [is among] other examples of [such] peculiarly national concerns . . . .") Véase además, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Cox, Federalism in the Law of Labor Relations, 67 *Harv. L Rev*. 1297, 1315 n. 76 (1954). Hay que destacar sin embargo, que la doctrina de desplazamiento elaborada por el Tribunal Supremo en este campo del derecho no es un modelo de translucidez.

Al aprobar el NLRA el Congreso no dispuso de guías claras y precisas que permitieran demarcar con precisión y claridad los linderos de acción permisible para el gobierno de los estados --que incluye al Estado Libre Asociado-- frente al gobierno federal. La ausencia de precisión sobre este particular ha dificultado la labor de los tribunales en su empeño de discernir cuál fue la intención del Congreso al plantearse si aplica o no la doctrina de desplazamiento. *Amalgameted Ass. of Motor Coach Employees v. Lockridge*, 403 U.S. 274, 289 (1971).

No empece, el Tribunal Supremo de los Estados Unidos ha elaborado dos principales categorías de casos laborales en los cuales ha dispuesto que el campo está ocupado. Las

categorías son: Primero, aquellos casos donde es evidente o parece serlo, que las actividades que el estado pretende reglamentar están **protegidas** por la sección 7 del NLRA[10]; o, cuando la actividad en cuestión está **prohibida** por la sección 8 del NLRA,[11] *e.g., San Diego Building Trades Council v. Garmon, ante.* Segundo, situaciones en las que se entiende que la acción estatal puede incidir o confligir con la política laboral federal referente a la estructura misma del NLRA, *e.g., Lodge 76, Internacional Association of Machinist v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976).

Precisa destacar que el análisis de desplazamiento se efectúa tomando en consideración **el tipo de conducta involucrada y no la naturaleza del remedio solicitado.** *Int. Lognshoremen's Ass'n., AFL-CIO v. Davis*, 476 U.S. 380, 383 (1986)("As the *Garmon* line of cases direct, the pre-emption inquiry is whether the conduct at issue is arguably protected or prohibited by the NLRA. That much is clear.")

---

[10] La sección 7 del NLRA, 29 U.S.C. sec. 157, dispone en lo pertinente:
> "Employees shall have the right to self organization, to, form, join, or assist labor organizations, to bargain collectively through representations of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . ."

[11] La sección 8(a) del NLRA, 29 U.S.C. sec. 158(a), dispone en lo pertinente:
> It shall be an unfair labor practice of the employer:
> (1) to interfere with restrain, or coerce employees in the exercise of the rights guaranteed in section 157 . . . .
> (2) to dominate or interfere with the formation or administration of any labor organization [. . . .]

Véase también, *International Union, U.A.W. v. Russell*, 356 U.S. 634 (1958).

El caso ante nuestra consideración se refiere a la primera de las categorías antes mencionadas toda vez que se alega que el Hospital despidió a la señora Rodríguez por motivo de sus actividades sindicales. Lo que implicaría necesariamente, que el Hospital incurrió en una práctica prohibida por la sección 8 del NLRA. Procede entonces analizar lo dispuesto sobre este particular en el caso seminal de *Garmon,* así como en su progenie.

D

En *Garmon*, un patrono instó una demanda en contra de la unión para recobrar los daños económicos que habría sufrido como resultado de unos piquetes pacíficos que condujo la unión frente a sus facilidades. El Tribunal Supremo revocó al Tribunal Supremo de California --quien había sostenido la concesión de daños--, disponiendo que los tribunales del estado de California no tenían jurisdicción. Bajo la regla elaborada en *Garmon*, si la actividad o conducta impugnada está cobijada o prohibida, o razonablemente puede estarlo bajo la sección 7 u 8 del NLRA, según fuere el caso, la acción estatal queda desplazada.

El Tribunal Supremo definió el estándar de desplazamiento aplicable bajo los siguientes términos:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by s 7 of the National Labor

Relations Act, or constitute an unfair labor practice under s 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is subject of national regulation would create potential frustration of national purposes.

*Garmon, ante*, pág. 244. El propósito de la norma enunciada en *Garmon* ha sido descrito bajo los siguientes términos: "The *Garmon* rule is therefore intended to preclude state interference with the NLRB's interpretation and enforcement of the integrated scheme of regulation establish by the NLRA." *Chaulk Services v. Mass. Comm. Against Discrimination*, 70 F.3d 1361, 1364 (1st Cir. 1995).

El Tribunal reconoció sin embargo, dos excepciones a la regla de desplazamiento que enunció, a saber: cuando la actividad regulada es meramente de la periferia o marginal a la ley federal; o, cuando la conducta reglamentada involucra intereses y responsabilidades profundamente enraizadas en áreas de alto interés para los gobiernos de los estados, y que en ausencia de una clara indicación congresional en contrario, no cabe una interpretación de que el Congreso tuvo la intención de privar al estado de su facultad para legislar o reglamentar la actividad en cuestión. *Garmon, ante*, pág. 779. Son estas excepciones las que han ido matizando la regla de *Garmon*, no

necesariamente con entera claridad o de forma armoniosa y coherente.[12]

Debemos destacar, en cuanto a la segunda excepción mencionada, que *Garmon* enfatizó que la decisión tomada en *Laburnum* debe limitarse a sus propios hechos. En *Laburnum,* principal fundamento invocado por el recurrido así como por la Opinión disidente, el Tribunal Supremo resolvió que no aplicaba la norma del campo ocupado en un caso de daños y perjuicios instado por un contratista contra una unión reclamando por los daños sufridos por él, como por sus empleados como resultado de los actos de **intimidación y violencia** que fueron objeto por parte de la unión.  El Tribunal hizo claro que su decisión se amparaba en la naturaleza de la conducta involucrada, a saber: la **intimidación y los actos de violencia.**  A tales efectos, en *Garmon* se indicó:  "that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence.'"  *Garmon*, *ante*, págs 247-248.  En igual sentido, *Weber v. Anheuser-Busch,*

---

[12] Tan es así, que la crítica en la doctrina sobre las excepciones no tan sólo abunda, sino que ha sido particularmente punzante.  Véase entre otros, Silverstein, Against Preemption in Labor Law, 24 *Conn. L. Rev*. 1, 17 (1991) ("the exceptions are seen as swallowing the rule"); Gregory, The Labor Preemption Doctrine: Hamiltonian Renaissance or Last Hurrah?, 27 *Wm. & Mary L. Rev*. 507, 509 n. 8 ("volatile checkerboard of inconsistent decisions.")  El profesor Archibald Cox describió la jurisprudencia sobre este tema bajo los siguientes términos:  "[There is] little interest in logical consistency and less interest in building a coherent and continuing body of law."  Cox, Recent Development in Federal Labor Law Preemption, 41 *Ohio St. L. J.* 277, 300 n. 8 (1980).

*Inc.*, 348 U.S. 468, 477 (1955).  **Por lo tanto, la norma sentada en *Laburnum* sólo es extensible a situaciones en que se reclame por actos de violencia e intimidación. Lo que no ocurre en el caso ante nosotros.**

De otra parte, en *Linn v. Plant Guard Worker*, 383 U.S. 53 (1966) el Tribunal resolvió que la doctrina de desplazamiento no impedía que un oficial de una compañía instara una acción de libelo bajo las leyes del estado de Michigan contra la unión, por motivo de unas expresiones libelosas hechas por esta última en contra de su persona durante la campaña para organizar el gremio laboral.  Al resolver, el Tribunal sostuvo: "it appears that the exercise of state jurisdiction here would be a 'merely peripheral concern of the Labor Management Relations Act,' provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false." 383 U.S. pág. 61.

El Tribunal no elaboró mucho más sobre lo que debía considerarse una acción meramente marginal ("merely peripheral"). Pero al resolver, ponderó los siguientes factores:  primero, que la reclamación que subyacía el reclamo de Linn no era una conducta protegida por el NLRA; segundo, que existía un interés apremiante del estado de proteger a sus ciudadanos de la conducta intencional y maliciosa imputada; y tercero, que la acción instada en el tribunal del estado no habría de interferir con la política laboral federal.  En última instancia, el Tribunal sopesó

los intereses involucrados concluyendo que la acción del estado no interfería con las prerrogativas de la Junta Nacional de adjudicar las controversias bajo el NLRA, y no existía peligro alguno que el estado fuera a validar una conducta prohibida por la legislación federal. Véase, *Belknap, Inc. v. Hale*, 463 U.S. 491, 498-499 (1983). Analizados en conjunto estos factores concluyó que no aplicaba la doctrina del campo ocupado en dicho caso.

En *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290 (1977), el Tribunal Supremo sostuvo que un miembro de una unión que alegaba que ésta había promovido una campaña de descrédito y abuso en su contra podía instar contra ésta una demanda en daños por angustias mentales.

El Tribunal Supremo resolvió que no aplicaba la doctrina de desplazamiento porque **la reclamación en daños en ese caso no se relacionaba con un reclamo de discrimen laboral también presentado por el demandante, por lo que la demanda en daños no habría de incidir sobre la política laboral federal en cuanto al asunto de discrimen sindical.** En tal sentido indicó lo siguiente, citamos *in extenso*:

> Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress [. . .] **The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee** [. . .] To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.
>
> [. . .] **Union discrimination in employment opportunities cannot itself form the underlying**

> 'outrageous' conduct on which the state-court
> tort action is based; to hold otherwise would
> undermine the pre-emption principle . . . Simply
> stated, it is essential that the state tort be
> either unrelated to employment discrimination or
> a function of the particularly abusive manner in
> which the discrimination is accomplished or
> threatened rather than a function of the actual
> or threatened discrimination itself. (Énfasis
> suplido.) (Citas omitidas.)

*Farmer*, 430 U.S. págs. 304-305.

Posteriormente, en *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, ante*, el Tribunal Supremo refinó el análisis de *Garmon* y aclaró que cuando se alega que no procede la doctrina del campo ocupado porque el asunto regulado por el estado se refiere a un tema de alto interés para éste, es imprescindible que la controversia a dilucidarse en el foro estatal sea diferente a la que se pueda presentar o se haya presentado ante la Junta Nacional. El Tribunal indicó específicamente lo siguiente:

> The critical inquiry, therefore, is not whether
> the State is enforcing a law relating
> specifically to labor relations or one of general
> application but **whether the controversy presented
> to the state court is identical to** (as in *Garner*)
> or different from (as in
> *Farmer*) **that which could have been, but was not,
> presented to the Labor Board. For it is only in
> the former situation that a state court's
> exercise of jurisdiction necessarily involves a
> risk of interference with the unfair labor
> practice jurisdiction of the Board which the
> arguably prohibited branch of the *Garmon* doctrine
> was designed to avoid.** (Énfasis nuestro.)

*Sears*, 436 U.S. pág. 196.

Establecido el marco jurídico aplicable sobre la doctrina de desplazamiento en el campo del Derecho laboral,

pasemos a repasar someramente la jurisprudencia de este Tribunal, la cual invoca a su favor la parte recurrida.

III

En *Santini Rivera v. Serv. Air, Inc.*, reconocimos que los parientes de un empleado que ha sido víctima de trato discriminatorio por su patrono, en violación de la Ley Núm. 100, tienen una causa de acción propia al amparo del Artículo 1802 del Código Civil, por los daños que sufrieran "a consecuencia del referido discrimen laboral." *Santini Rivera, ante*, pág. 11.

Para prevalecer en tal reclamo, los parientes deben probar: 1) que han sufrido un daño moral compensable; 2) **que el daño fue causado por la conducta discriminatoria del patrono hacia el empleado**, quien tiene vínculos de parentesco, afecto o cariño de modo tal, que el impacto del trato discriminatorio sobre dicho empleado refluye sobre ellos y les causa perjuicio; y 3) que el acto del patrono fue culposo, conforme al concepto abarcadoramente amplio que prevalece en nuestro ordenamiento sobre la responsabilidad civil extracontractual. *Santini Rivera, ante*. En su consecuencia, "una vez quede establecido el trato discriminatorio en cuestión", procederá la compensación en daños. *Íbid*.

Posteriormente, en *Maldonado v. Banco Central Corp., ante*, pág. 276, construyendo sobre *Santini Rivera*, indicamos que probados los tres elementos de la causa de acción bajo el Artículo 1802, "se compensarían los daños

sufridos por el cónyuge como consecuencia del **discrimen decretado en acción separada bajo la Ley Núm. 100, supra. Esta acción es contingente ya que si el empleado no prevalece, su consorte no puede reclamar por un discrimen no probado.**" (Énfasis en original y nuestro.)

En *Dorante v. Wrangler of P.R.*, *ante*, utilizando igual razonamiento, reconocimos una causa de acción bajo el Artículo 1802 al cónyuge de un empleado que alegó haber sido víctima de represalia en violación a la sección 21 de la Ley Núm. 96 del 26 de junio de 1953. Establecido el acto de represalia, es decir la violación a la Ley Núm. 96, el cónyuge tendría derecho a recuperar por sus daños.

Resaltamos lo ya dicho, en estas situaciones la reclamación bajo el Artículo 1802 es contingente a que se determine el acto discriminatorio del patrono.

Pasemos entonces a aplicar lo discutido a los hechos del caso.

IV

Como señalamos inicialmente, el Hospital sostiene que la reclamación en daños y perjuicios de los recurridos está sujeta a que se establezca la conducta ilegal del patrono, es decir que la señora Rodríguez fue despedida como resultado de sus actividades gremiales. Por tal razón, entiende que debe ser desestimado el presente litigio toda vez que el tribunal carece de jurisdicción para considerar los méritos del alegado discrimen sindical, por ser éste un

asunto de la exclusiva competencia de la Junta Nacional en virtud de lo dispuesto en el NLRA.

A poco que revisemos el récord del caso, según consta ante nosotros, no hay duda que la razón de pedir de los demandantes recurridos es el alegado acto discriminatorio a que fue sometida la señora Rodríguez. Sobre este particular resulta ilustrador el siguiente diálogo acaecido durante la deposición del señor Díaz Arroyo, esposo de la señora Rodríguez:

P. Usted en su demanda, usted y sus hijos están demandando al Hospital Susoni por los daños sufridos a raíz del despido de su esposa.

R. Correcto.

P. **¿Usted entiende que fue un despido discriminatorio?**

R. **Entendemos que sí.**

P. **¿Por qué usted entiende eso?**

R. **Entendemos que el despido fue motivado como resultado de la intención de mi esposa de pertenecer a un movimiento sindical y que Hospital Susoni en un intento de desarticular ese movimiento comenzó a intentar remover personal y hacer otro tipo de acciones, no, que son de nuestro conocimiento y entonces ella pues, fue despedida.**

P. **Su demanda se circunscribe al despido alegadamente discriminatorio de su esposa, ¿correcto?**

R. **Es correcto.**

P. Y el discrimen usted indica que se debe a las actividades sindicales en las cuales ella participaba, ¿correcto?

R. Eso es correcto.

P.    Con    relación    a    la    Unidad    Laboral    de
Enfermeras    y    Empleados    de    la    salud,    ¿eso    es
correcto?
R.    Correcto.

P.    O sea, que **ella fue discriminada básicamente
por   sus   actividades   sindicales   según   usted
entiende**.

R. **Sí, en cierto modo**.

P.    Usted alega que sufrió, usted y sus hijos,
daños  por  angustias  y  sufrimientos  mentales,
daños emocionales y morales, pérdida del gozo,
etc.  Yo le pregunto al momento del despido de su
esposa, ¿usted entendía en ese mismo momento que
se  debía  a  un  discrimen  por  razón  de  sus
actividades sindicales?

R.    Si.

(Énfasis nuestro.)

Es   evidente   entonces   que   la   razón   de   pedir   de   los

demandantes,  o  conducta  subyacente  a  su  reclamo,  es  la

alegada  violación  a  la  sección  8  del  NLRA  por  parte  del

patrono.[13]   Por   lo   tanto,   para   prevalecer   en   la   demanda

instada el tribunal está obligado a hacer una determinación

en   el   sentido   que   la   señora   Rodríguez   fue   objeto   de

discrimen por sus actividades gremiales.

Pero  como  ya  habíamos  indicado,  cuando  se  reclama  por

una  conducta  que  está  prohibida  por  la  sección  8  del  NLRA,

la  jurisprudencia  del  Tribunal  Supremo  ha  determinado  que

---

[13] Es menester resaltar que la doctrina de desplazamiento en
el ámbito laboral impide que un tribunal de un estado o del
Estado Libre Asociado entienda sobre una conducta proscrita
por el NLRA, independientemente de si la misma violenta a
su vez, derechos constitucionales o alguna legislación
laboral estatal.  Es por ello, que diferimos del criterio
en contrario expresado en la Opinión disidente.  Validar
dicha posición supondría dejar sin efecto la larga
trayectoria de desplazamiento en el campo laboral esbozada
reiteradamente por el Tribunal Supremo de los Estados
Unidos y por este Tribunal.

los tribunales de los estados, y así lo hemos reconocido respecto el Estado Libre Asociado, no tienen jurisdicción para atender la misma. Esta prohibición obedece, según expresa el propio Tribunal Supremo, a que: "to allow the States to control conduct which is subject of national regulation would create potential frustration of national purposes." *Garmon, ante*, pág. 246.

Cabe recordar que en estos casos el análisis se centra en la conducta involucrada y no en el remedio solicitado. *Garmon, ante*, pág. 780. ("It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction.") En este caso, los demandantes solicitan compensación por el discrimen sindical en que alegadamente, el Hospital Susoni incurrió al destituir a la señora Rodríguez de su empleo. Si hubo o no hubo discrimen sindical es un asunto de la esencia misma de la función que el Congreso le encomendó con carácter de exclusividad, a la Junta Nacional de Relaciones del Trabajo. Adviértase además, que conforme se desprende de la aplicación de *Farmer* a este caso, la conducta culposa no puede ser el discrimen sindical mismo.

Puntualizamos lo siguiente, en este caso se presentó ante la Junta Nacional una querella por discrimen sindical. Asunto sobre el cual la Junta no se expresó al aprobar la transacción suscrita por las partes, en la cual como se indicó, no hubo admisión alguna de práctica ilícita por

parte del patrono. Debemos suponer que avalar la transacción bajo esos términos recoge el criterio de la Junta Nacional de que de esta forma se adelanta o promueve la política laboral federal prevaleciente. Permitir entonces que se dilucide nuevamente, ahora ante los tribunales del Estado Libre Asociado, el asunto sobre el alegado discrimen laboral, necesariamente conlleva el potencial de interferencia con la política laboral establecida por la Junta Nacional. Ya bien porque el tribunal podría emitir una determinación que resultara inconsistente con esa política laboral; o porque la Junta Nacional hubiese determinado que en este caso lo más idóneo era promover la transacción sin ulterior determinación de responsabilidad. Este potencial de interferencia es precisamente lo que pretende evitar la doctrina del campo ocupado en el área laboral.

No hay duda que el Estado Libre Asociado tiene un claro y legítimo interés en resarcir a los familiares de un empleado que ha sido sujeto de discrimen en su empleo. Ello sin embargo, no es suficiente en este caso para sobrepasar el escollo que representa la doctrina de desplazamiento en el campo del Derecho laboral. La estrecha simetría que existe entre la conducta discriminatoria sobre la cual tendrá que pasar juicio el foro de instancia y la conducta involucrada en la reclamación instada ante la Junta Nacional, nos obliga forzosamente a concluir que, tratándose de una conducta

prohibida por la sección 8 del NLRA, el tribunal de instancia no tenía jurisdicción sobre la materia en este caso por lo cual debió desestimar la demanda instada.

**Debe quedar meridianamente claro que nuestra decisión se circunscribe a los hechos específicos de este caso**, donde se **reclamó solamente por los daños que el discrimen sindical le causó a los familiares de la señora Rodríguez** y donde se había presentado previamente una reclamación ante la Junta Nacional de Relaciones del Trabajo que concluyó sin determinación alguna de responsabilidad patronal. No estamos frente a un reclamo de que la conducta del patrono para con su empleada fue humillante, vejatoria y claramente abusiva, y los parientes de ésta reclamen resarcimiento por los daños que pudo suponer ese proceder. Como se indicó en *Farmer*, "[s]imply stated, it is essential that the state tort be either unrelated to employment discrimination **or a function of the particularly abusive manner in which the discrimination is accomplished or threatened . . . ."** *Farmer, ante*, pág. 305. (Énfasis nuestro.) No siendo éste el caso, debemos concluir que el tribunal de primera instancia no tenía jurisdicción en este caso.

Finalmente debemos apuntar que con anterioridad ya nos habíamos enfrentado a una controversia muy similar a la de autos en *Rivera v. Security National Life Insurance*, 106 D.P.R. 517 (1977). Allí resolvimos que un empleado despedido por motivo de sus actividades sindicales, en violación de las secciones 7 y 8 del NLRA, sólo tenía

derecho al remedio que le concedía la referida ley y nos negamos a atender su demanda en daños y perjuicios por motivo del discrimen de que fue objeto. Cabe señalar que en dicho caso los familiares del empleado también habían demandado junto a éste al patrono. No nos expresamos sin embargo, sobre la reclamación de éstos aun cuando la desestimamos también.

Somos del criterio que a la luz de los hechos presentados en este caso, el Tribunal de Primera Instancia no tenía jurisdicción para atender en la demanda instada bajo el Artículo 1802 por los parientes de la señora Rodríguez por el alegado discrimen sindical de que alega fue objeto.

V

Por los fundamentos antes expuestos, estoy conforme con la Sentencia dictada desestimando el presente litigio.


                                    Anabelle Rodríguez Rodríguez
                                         Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Enrique Díaz Arroyo
y otros

     Recurridos

       vs.                        CC-2004-499
Certiorari

Hospital Dr. Susoni, Inc.

     Peticionarios


Opinión Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

     San Juan, Puerto Rico, a 21 de septiembre de 2006.


     La doctrina del campo ocupado, o del desplazamiento del poder estatal, constituye uno de los asuntos más intricados del constitucionalismo norteamericano. Responde al interés por proteger la supremacía del derecho federal frente a la integridad del poder legislativo de los estados, en la dificultosa frontera donde uno y el otro convergen.

     El problema surge porque los estados, igual que Puerto Rico, al ejercer su legítima facultad de velar por el bienestar general de su comunidad, aprueban normas que ocasionalmente pueden incidir sobre algún asunto o materia sobre el cual el Congreso tiene plena autoridad legislativa. En tales casos, la norma estatal no puede prevalecer **si en efecto conflige con**

**una norma federal**. El Tribunal Supremo de Estados Unidos lo ha expresado de esta manera:

> **"State law is pre-empted to the extent it actually conflicts with federal law; that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress".** <u>Silkwood v. Kerr-McGee Corp</u>., **464 US 238, 248 (1984)**.

Nosotros mismos nos hemos expresado antes en varias ocasiones sobre esta situación en la cual una norma de nuestro propio ordenamiento jurídico converge con una norma federal. En esencia hemos señalado que la legislación nuestra es válida y aplicable siempre y cuando no esté sustancialmente en conflicto con la norma federal. **"El conflicto debe ser tan directo y positivo que las dos leyes no puedan armonizarse o coexistir al mismo tiempo".** <u>Bordas & Co. v. Srio. de Agricultura</u>, 87 D.P.R. 534, 553 (1963) (Énfasis suplido). También hemos aclarado que si el interés que se desea proteger mediante nuestra norma es distinto al que el estatuto federal protege, **la norma estatal no queda desplazada.** <u>Pancorbo v. Wometco de P.R., Inc.</u>, 115 D.P.R. 495, 500 (1984). Véanse, además, <u>Ossorio Ruiz v. Srio. de la Vivienda</u>, 106 D.P.R. 49, 51 (1977); y <u>RCA v. Gob. de la Capital</u>, 91 D.P.R. 416, 439-440 (1964).

Es menester, además, tener en cuenta la postura moderna del Tribunal Supremo de Estados Unidos sobre este asunto, **que es la de favorecer la vigencia y aplicación del derecho estatal**, a menos que exista un **conflicto directo real e irremediable** de éste con un estatuto federal. <u>N.Y. State</u>

Dept. of Social Services v. Dublino, 413 U.S. 405 (1973). Los eminentes profesores Rotunda y Nowak, en su conocida obra Treatise on Constitutional Law, Vol. 2, págs. 215-219 (1999), lo explican así:

> "...the Supreme Court, in recent years, has anticipated and imposed a **presumption against preemption**. There is no strong presumption in favor of federal preemption; indeed, the Supreme Court is more likely to keep the preemption blade in its sheath." (Enfasis suplido).

A la luz de todo lo anterior, no es sostenible el dictamen de la mayoría del Tribunal en el caso de autos. Aquí la mayoría en efecto estima que los foros judiciales de Puerto Rico no tienen jurisdicción para atender una reclamación incoada al amparo del Art. 1802 de nuestro Código Civil sólo porque ésta supuestamente conlleva un **potencial** de interferencia con alguna política laboral que pudiese establecer la Junta Nacional de Relaciones del Trabajo. La postura de la mayoría claramente va mucho más lejos de lo que ha exigido el propio Tribunal Supremo federal. Se desautoriza la vigencia del derecho nuestro, no porque en efecto conflija sustancialmente con una norma federal sino sólo por la doble suposición de que podría potencialmente surgir algún conflicto, con alguna norma que la Junta federal pudiese establecer.

Este infundado desplazamiento del derecho patrio más allá de lo requerido por las normas pertinentes norteamericanas sorprende sobre todo porque la médula de la acción de daños en el caso de autos **no es de ningún modo la dilucidación judicial de un discrimen laboral federal**

**sufrido por la esposa del demandante** sino la comprobación al amparo de nuestro Código Civil de ciertos daños ocasionados a éste por un despido que fue indisputablemente injustificado, como surge de modo inevitable del propio acuerdo transaccional mediante el cual no sólo se **reinstaló** a la esposa del demandante a su antiguo empleo sino que se le pagó una cantidad sustancial por **salarios dejados de recibir.** Como la acción de daños en cuestión no requiere interpretar si hubo o no un discrimen laboral que violase el estatuto federal sino que parte del **hecho** indisputado de que hubo un despido injustificado, **no puede desplazarse la acción estatal**, según lo ha resuelto expresamente el propio Tribunal Supremo federal en casos similares de índole laboral. Véase, Linge v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988). Ciertamente no existe aquí la **identidad de reclamación** con una querella que pudiese presentarse ante la Junta federal, ya que lo que se plantea en el caso de autos es una acción torticera claramente distinta a dicha querella. Sears v. San Diego County, 436 U.S. 180 (1978).

Como entiendo, pues, que no hay razón válida alguna para descartar la **jurisdicción** del foro de instancia sobre esta reclamación, yo DISIENTO.

Jaime B. Fuster Berlingeri
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Enrique Díaz Arroyo y otros
         Recurridos

                                              CERTIORARI

         v.                        CC-2004-499

Hospital Dr. Susoni, Inc.
         Peticionario

Opinión Disidente emitida por la JUEZA ASOCIADA SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 21 de septiembre de 2006.

Me veo en la obligación de disentir de la adjudicación del presente caso. Contrario a la decisión a la que llega el Tribunal, confirmaría al Tribunal de Apelaciones y resolvería que los tribunales de Puerto Rico tienen jurisdicción para adjudicar la demanda en daños presentada por los familiares de un empleado que ha transigido sus reclamaciones contra el patrono ante la Junta Nacional de Relaciones de Trabajo, aun cuando dicha demanda esté basada en los mismos actos discriminatorios del patrono que fueron alegados por el empleado ante la Junta. Al revocar al Tribunal de Apelaciones, este Tribunal dificulta estas transacciones ante la Junta Nacional de Relaciones del Trabajo, pues los empleados al

transigir despojarían a sus familiares de una causa de acción en daños en contra del patrono. La decisión del Tribunal, además, deja desprovistos de remedios a los familiares de los empleados que decidan transigir.[14]

I

La Opinión de conformidad reseña correctamente los hechos del caso. Por tanto, procederé directamente a la discusión de la cuestión jurisdiccional.

El Tribunal Supremo de Estados Unidos ha sostenido en numerosas ocasiones que un estado no tiene facultad para intervenir en asuntos que caen bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo. Machinists v. Wisconsin Emp. Rel. Comm'n, 427 U.S. 132 (1976); Farmer v. United Brotherhood Carpenters and Joiners of America, et al., 430 U.S. 290 (1977). Esta norma de supresión de la facultad jurisdiccional (pre-emption rule) incluye también a Puerto Rico. Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517 (1977). Por otra parte, la limitación de la facultad de intervención de los estados en los asuntos encargados a la jurisdicción de la Junta Nacional de Relaciones del Trabajo tiene dos vertientes. La primera se refiere a la ocupación del campo por el Congreso en cuanto al proceso legislativo de los asuntos ordenados a la Junta. La segunda vertiente se centra en la supresión de la jurisdicción de los tribunales federales y estatales en cuanto a controversias al amparo del Labor Management Relations Act, 29 U.S.C. §§ 141-197, o de reclamaciones que incidan directamente sobre el esquema regulador de esta ley o por hechos que pudieran dar paso a

---

[14] También, resulta preocupante el impacto de la decisión de este Tribunal sobre la política que favorece que las partes resuelvan sus controversias por medio de la transacción.

una reclamación bajo la ley federal ante la Junta Nacional de Relaciones del Trabajo.

Bajo la primera vertiente, los estados no pueden crear legislación que repercuta directamente sobre las actividades reguladas por el *Labor Management Relations Act, supra.* Los estados y Puerto Rico tienen que abstenerse de legislar en cuanto a actividades protegidas por la Sección 7 del *Labor Management Relations Act, supra,* o que constituyan una práctica ilícita definida en la Sección 8 de la misma ley. Sears v. San Diego County, 436 U.S. 180 (1978); San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). Sin embargo, el Tribunal Supremo de Estados Unidos ha sostenido que la ley federal no le impide a los estados legislar cuando la actividad regulada por la ley estatal sea de carácter marginal a las actividades reguladas por la ley federal o cuando la conducta regulada por el estado esté tan profundamente enraizada en áreas del interés y de la responsabilidad local que en ausencia de una clara expresión del Congreso al contrario no pueda inferirse que la intención congresional fue suprimir la jurisdicción estatal. San Diego Building Trades Council v. Garmon, *supra*; Belknap, Inc. v. Duwaine E. Hale et. al., 463 U.S. 491 (1983). De hecho, se permite que un estado, en el ejercicio de su *police power*, tome medidas que incidan sobre aspectos regulados por la ley federal siempre y cuando que dichas medidas sean necesarias para mantener el orden y la seguridad pública. Farmer v. United Brotherhood Carpenters and Joiners of America, et al., *supra*; Allen-Bradley Local v. Wisconsin Emp. Rel. Bd., 315 U.S. 740 (1942). También, el *Labor Management Relations Act, supra,* crea otras excepciones, que permiten a los estados regular ciertas conductas que afecten la legislación federal.

*Véase* 29 U.S.C. §§ 164, 185, 187. El estándar para saber si el estado puede legislar sobre un aspecto de interés laboral es si la legislación estatal interfiere con el esquema de regulación uniforme de la ley federal. Linn v. Plant Guard Workers, 383 U.S. 53 (1966).

La segunda vertiente de la doctrina de supresión de la facultad jurisdiccional en el ámbito laboral en cuanto al *Labor Management Relations Act* se refiere a la capacidad de los tribunales federales y estatales para adjudicar controversias que involucren conductas relacionadas con las prácticas ilícitas en el trabajo contenidas en la ley. Esta segunda vertiente tiene a su vez dos aspectos. En primer lugar se encuentra el postulado de que la Junta Nacional de Relaciones del Trabajo tiene jurisdicción exclusiva para atender los reclamos que surjan al amparo de la ley, en particular, las conductas protegidas por la sección 7 del *Labor Management Relations Act* o las conductas que constituyan una práctica ilícita bajo la sección 8 de la ley. No obstante, los tribunales también deben abstenerse de ejercer su jurisdicción cuando pueda razonablemente presumirse que las actividades que son objeto del litigio están dentro del alcance del *Labor Management Relations Act*. San Diego Bldg. Trades Council v. Garmon, *supra*; Marine Engineers v. Interlake Co., 370 U.S. 173 (1962). Es importante, al evaluar este asunto, señalar que la inhibición del tribunal de ejercer su jurisdicción depende del tipo de conducta envuelta y no de la naturaleza del remedio solicitado. International Union, U.A.W. v. Russell, 356 U.S. 634 (1958); United Construction Workers v. Laburnum Const. Corp., 347 U.S. 656 (1954).

En ese análisis debe tomarse en cuenta el potencial de interferencia que la intervención judicial pueda tener con el esquema federal. Según establece la jurisprudencia federal, el criterio determinante es si la controversia que se plantea ante los tribunales es idéntica a la que se plantearía ante la Junta Nacional de Relaciones del Trabajo. Sears v. San Diego County, *supra*, en la pág. 196. También es importante, al igual que sucede con la ocupación de campo, sopesar el interés del estado de regular la conducta en controversia por medio de sus tribunales. Si se trata de una conducta cuya regulación o adjudicación por los tribunales está profundamente enraizada en áreas del interés y de la responsabilidad local y no puede inferirse que la intención del Congreso fuera removerla de la esfera estatal, la intervención judicial debe prevalecer. *Id.* Por otro lado, el Tribunal Supremo de Estados Unidos ha establecido también que los tribunales estatales no tienen razón alguna para inhibirse de ejercitar su jurisdicción cuando la acción torticera que se lleve en el tribunal estatal no esté relacionada con la discriminación en el empleo o se base más bien en los actos del patrono mediante de los cuales se efectuó el discrimen. Farmer v. United Brotherhood Carpenters and Joiners of America, et al., *supra*.

No se pretende con estas normas de remoción de la jurisdicción prohibir que los estados legislen o que los tribunales se queden sin jurisdicción en cuanto a toda conducta o aspecto que incida de una forma u otra sobre el contenido del *Labor Management Relations Act*, *supra*. Farmer v. United Brotherhood Carpenters and Joiners of America, et al., *supra*, Sears v. San Diego County, *supra*. El propósito de estas normas de remoción de la jurisdicción es evitar

posibles conflictos de interpretación en la aplicación y la administración de la política laboral uniforme contenida en el *Labor Management Relations Act*, *supra*. El objetivo del Congreso es tener solamente un foro que adjudique de manera uniforme todo lo relativo a la legislación federal. <u>Golden State Transit Corp. v. City of Los Angeles</u>, 475 U.S. 608 (1986).

Es por esta razón, que el Tribunal Supremo de Estados Unidos ha adoptado como norma el que los tribunales puedan adjudicar casos que de alguna forma repercutan sobre los intereses protegidos en el *Labor Management Relations Act*, siempre y cuando utilicen como referencia precedentes claros de la Junta y los apliquen a hechos que no estén en controversia. De esta forma no se viola el principio de que sea la Junta Nacional de Relaciones del Trabajo, por su peritaje, la encargada en primera instancia de determinar el significado de las regulaciones contenidas en el *Labor Management Relations* Act, *supra*. Tampoco se da el problema de tener decisiones encontradas en cuanto a la legislación federal. <u>Sears v. San Diego County</u>, *supra*; <u>San Diego Bldg. Trades Council v. Garmon</u>, *supra*.

Así mismo, el Tribunal Supremo federal ha resuelto que en tanto y en cuanto el Congreso no haya establecido un procedimiento para atender las consecuencias de una conducta torticera, se deberá aplicar el procedimiento estatal para recobrar por los daños producidos por esa conducta, aun cuando ésta pueda ser sancionada de otro modo por la Junta Nacional de Relaciones del Trabajo. <u>United Workers v. Laburnum Corp.</u>, *supra*.[15] De lo contrario, se privaría a

---

[15] Para una discusión de este caso véase nuestras expresiones en <u>Rivera v. Security Nat. Life Ins. Co.</u>, 106 D.P.R. 517 (1977).

quienes han sufrido un daño del derecho a ser compensados, lo cual equivaldría a conceder inmunidad a las partes demandas. La intención del Congreso con el *Labor Management Relations Act*, *supra*, no ha sido nunca el privar de remedios a las partes ni tampoco reducirlos, sino lo contrario. *Id.*; <u>Puerto Rico Telephone v. Junta Rel. Trabajo</u>, 86 D.P.R. 382 (1962). Por eso, el Tribunal Supremo de Estados Unidos ha reconocido que en ausencia de un remedio ante la Junta Nacional de Relaciones del Trabajo es improcedente dictaminar que los tribunales carecen de jurisdicción para adjudicar la controversia que se les plantee. *Véase* <u>United Workers v. Laburnum Corp.</u>, *supra*.

## II

A luz de la discusión que antecede, es claro que los tribunales de Puerto Rico pueden ejercitar su jurisdicción para adjudicar la controversia del presente caso, y que no están obligados de modo alguno a inhibirse de ejercerla. En primer lugar, la reclamación de los familiares de la señora Rodríguez que no presenta un problema bajo la primera vertiente de la doctrina de supresión de la facultad jurisdiccional en el ámbito laboral, ya que para resolverla no es necesario recurrir a una norma contenida en la ley federal sino a una norma general del derecho de daños. Tampoco se trata de un asunto sobre el cual la Junta Nacional de Relaciones de Trabajo tenga jurisdicción exclusiva, ya que quien hace la reclamación no es un empleado sino sus familiares, sobre los cuales la Junta no tiene jurisdicción alguna. Por tanto, nuestros cuestionamientos para decidir si los tribunales de Puerto Rico tenemos jurisdicción en este caso se deben evaluar de acuerdo al segundo aspecto de la segunda vertiente de la doctrina de supresión de la facultad

jurisdiccional en el ámbito laboral. En otras palabras, se debe determinar si puede razonablemente presumirse que las actividades que son objeto de este litigio están dentro del alcance del *Labor Management Relations Act, supra.* De no ser así, los tribunales puertorriqueños no deben abstenerse de ejercer su jurisdicción.

Como ya señalara, aunque la reclamación de los familiares de la señora Rodríguez se basa en hechos que constituyen una conducta regulada por la legislación federal, la Junta Nacional de Relaciones del Trabajo no tiene jurisdicción sobre dicha reclamación, por cuestión de las partes envueltas.[16] Se trata, más bien, de una de esas situaciones en las cuales el Congreso no ha establecido un procedimiento uniforme bajo el *Labor Management Relations Act, supra,* para dirimir las consecuencias de una conducta torticera. Aplica, por tanto, la norma adoptada por el Tribunal Supremo Federal en el caso de <u>Laburnum,</u> *supra*, por lo cual se debe permitir que se proceda con el procedimiento estatal para recobrar por los daños alegadamente causados por esa conducta. En conclusión, al amparo de la jurisprudencia federal que interpreta la jurisdicción de la Junta Nacional de Relaciones del Trabajo, nuestros tribunales tienen jurisdicción para adjudicar la controversia que presentan los demandantes en este caso.

Por otra parte, aun si se obviara la doctrina de <u>Laburnum,</u> *supra*, nuestros tribunales tendrían jurisdicción en el presente caso. La controversia que se plantea en este caso no es idéntica a la que se presentaría ante la Junta Nacional

---

[16] Los casos que se discuten en la Opinión de conformidad se refieren a situaciones en las cuales las partes que reclamaban en el foro estatal o en el foro judicial federal estaban bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo. Éste, me reafirmo, no es el caso que tenemos ante nuestra consideración.

de Relaciones del Trabajo. *Véase* <u>Belknap, Inc. v. Duwaine E.
Hale et. al.</u>, *supra*. Reiteradamente hemos reconocido que el
concepto de la culpa que emana de nuestro Código Civil es tan
infinitamente amplio como para incluir cualquier falta de una
persona que produce un mal o un daño. <u>Soc. de Gananciales v.
El Vocero de P.R.</u>, 135 D.P.R. 122 (1994).

La Opinión de conformidad enfoca la causa de acción de
los demandantes como una acción por los daños alegadamente
causados por una práctica ilícita en el trabajo. Por eso,
estima que para que proceda la reclamación en daños es
necesario haber prevalecido en el reclamo laboral, como en el
caso de las acciones de daños por violaciones bajo la Ley
núm. 100. En este caso sería necesario haber prevalecido en
el reclamo de discrimen por prácticas sindicales frente a la
Junta Nacional de Relaciones del Trabajo, lo cual, al
transigirse el caso administrativo, no sucedió. Discrepo,
pues aquí el reclamo de los demandantes es en daños por
alegadas violaciones a los derechos constitucionales de la
señora Rodríguez por parte del Hospital Dr. Susoni y no por
una práctica ilícita al amparo de la ley federal.

Los demandantes alegan que se violó el derecho de su
esposa y de su madre a organizarse sindicalmente. En otras
palabras, reclaman daños por la violación a la sección 16[ta]
del artículo II de nuestra Constitución.[17] A mi entender, la

---

[17] Este reclamo surge claro de parte de la deposición que se
le tomara a uno de los demandantes, el esposo de la señora
Rodríguez. Lo pertinente de esta deposición lo reproducimos a
continuación.
...
**R. Porque yo sé de propio conocimiento que una vez
usas la intervención, la Unión de Empleados de a
Salud, ULEES, al Hospital Susoni y ganó unas
elecciones, ellos estaban haciendo movimientos para
desarticular la Unión.**
P. ¿Cómo usted sabe eso?
R. Pues, de propio conocimiento. A mí me lo dijo
personalmente el Dr. García Lloréis.

acción por violación al derecho constitucional de sindicalización de los puertorriqueños no es igual a la acción de discrimen sindical estatuida en el *Labor Management Relations Act*, *supra.* La acción bajo el *Labor Management*

---

...

P. ¿Dónde?

R. ¿Dónde? En una actividad en el Arecibo Country Club, actividad de Navidad del Hospital Dr. Susoni.

...

P. Del 99. ¿Y por ese comentario usted entendió que el despido entonces de su esposa se debió a eso?

R. Hablamos también, son ese comentario, no. Hablamos muy...

...

P. ¿Algún otro incidente que usted entendió que le dio a entender a usted...?

**R. Sí, el Dr. Arnaldo Matos, quien es mi amigo personal, estaba reunido también en la misma mesa y se estaba hablando de qué forma o manera se podía desarticular la Unión. Claro, lo que nunca pensé es que mi esposa iba a caer en la redada de ellos.**

...

**R. Perdóneme, perdóneme un segundito. Al momento del despido quien despide a mi esposa es realmente el Dr. Miguel García Lloréis, que hasta le comentó, "El viejo tuyo me va a matar", porque son amigos. Él le hace muy claro a ella que el despido que él está haciendo es con el propósito de desaparecer la Unión de Susoni.**

...

R. A raíz del despido sufrimos los daños que alegamos en la demanda, es correcto.

P. Y me indico anteriormente que...

R. Obviamente...

P. ... en ese mismo instante del despido, ustedes, usted personalmente sabía que el despido era discriminatorio.

**R. Sí. Claro, veníamos sufriendo ya porque los movimientos que estaba haciendo el Hospital Dr. Susoni hacían un taller de trabajo un poco complicado para mi esposa. Y ella pues, llegaba a casa ansiosa y a contarme la situación que estaba afrontando en el trabajo.**

P. ¿Usted entiende que también a raíz de ese discrimen?

R. Perdóneme.

**P. O sea, que le imponían ese taller de trabajo difícil por el mismo ánimo discriminatorio, ¿eso es lo qué me está indicando?**

**R. Sí, porque le estaban solicitando la renuncia, le estaban solicitando la renuncia.**

P. ¿Antes de despedirla?

R. Seguro.

**P. Por el mismo ánimo discriminatorio que me lleva describiendo, ¿correcto?**

**R. Sí.**

(Énfasis suplido).

*Relations Act*, *supra,* es más restringida porque está claramente definida por la propia ley, mientras que la acción bajo nuestra Constitución es más amplia y puede incluir conductas no contenidas en la regulación federal.

Es evidente que la acción bajo nuestro derecho de daños por violación a los derechos laborales recogidos en nuestra Constitución incide sobre la regulación federal. No obstante, al sopesar los intereses de Puerto Rico en cuanto a regular por medio de sus tribunales esta conducta, nos percatamos que se trata de una conducta cuya regulación o adjudicación por los tribunales está tan profundamente enraizada en las áreas del interés y de la responsabilidad local que se colige que Puerto Rico debe ejercer su jurisdicción en este asunto. Esto, unido a que no podemos inferir una intención clara del Congreso de que la controversia que presentan las partes en este caso debe ser removida de la esfera estatal, nos lleva a concluir que nuestros tribunales pueden ejercitar su jurisdicción para solucionar la controversia que este caso les presenta. *Véase* Belknap, Inc. v. Duwaine E. Hale et. al., *supra*.

Por último, aun cuando se entendiera que la controversia que se nos presenta versa sobre cuestiones o incide de algún modo sobre un asunto bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo, no estamos ante un caso en el cual una decisión del tribunal estatal necesariamente entorpezca el funcionamiento del esquema uniforme federal o que se corra el riesgo de interpretar el *Labor Management Relations Act*, *supra,* de manera contraria a la forma en que lo haría la Junta Nacional de Relaciones del Trabajo. Después de todo, el Tribunal de Primera Instancia puede recurrir a los precedentes de la Junta en caso de que tenga que hacer

una determinación o interpretación a partir de la ley federal. Por otra parte, se trata de una controversia en la cual los hechos pueden quedar claramente establecidos, una vez se celebre el juicio o mediante acuerdos de las partes. Estarían presentes entonces las condiciones elaboradas por la jurisprudencia federal antes discutida para permitir la intervención de los tribunales. Así pues, nuestros tribunales también tendrían facultad bajo este fundamento para ejercer su jurisdicción en el presente caso. *Véase* <u>Sears v. San Diego County</u>, *supra*; <u>San Diego Bldg. Trades Council v. Garmon</u>, *supra*.

### III

De otro lado, aun si adoptáramos la premisa de que nuestros tribunales no deben ejercer su jurisdicción cuando la reclamación de daños se basa en el discrimen laboral alegado, entiendo que debido a las reclamaciones y la prueba que consta en el expediente, este caso, según la doctrina de *Farmer*, *supra*, no debe ser desestimado. Vimos que en *Farmer*, *supra*, el Tribunal Supremo federal sostuvo que cuando la acción torticera presentada en el tribunal estatal no esté relacionada con la discriminación en el empleo **o cuando la acción se base en los actos mediante los cuales se efectuó el discrimen**, los tribunales estatales no tienen razón alguna para no ejercitar su jurisdicción. <u>Farmer v. United Brotherhood Carpenters and Joiners of America,</u> et al., *supra*. Como mencionara, lo que está ante nuestra consideración en el presente caso es una acción de daños por la alegada violación a los derechos constitucionales de la señora Rodríguez, por lo que los elementos de prueba son distintos a los de la reclamación laboral ante la Junta Nacional de Relaciones del Trabajo. Por otra parte, la deposición de uno de los

demandantes en este caso da a entender, contrario a la conclusión de la Opinión de conformidad, que los demandantes pudieran establecer una demanda por los actos en los que se expresó el discrimen y no por el discrimen en sí.[18] Por eso entiendo que aun si aceptáramos que los tribunales puertorriqueños no deben ejercer su jurisdicción ante una reclamación basada en un discrimen laboral regulado por la legislación federal, este Tribunal debió haber devuelto el caso para que el foro de instancia determinara el fundamento fáctico de la reclamación. Todo ello en consonancia con lo resuelto en el caso de Farmer, *supra*, y con nuestra normativa sobre las mociones de sentencia sumaria, que requiere que no hayan hechos esenciales en controversia antes de resolver sumariamente.

Al interpretar la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3 (2001),[19] que regula las sentencias sumarias, hemos requerido que los tribunales de instancia sean mesurados en su uso y hemos señalado que sólo lo deben hacer cuando estén totalmente convencidos que no existen

---

[18] *Véase* escolio 3.

[19] La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3 (2001), provee en lo pertinente referente a la resolución de mociones de sentencia sumaria, lo siguiente:

> …La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.

controversias sobre los hechos del caso, y que sólo resta aplicar el derecho. Para poder tener esta seguridad en cuanto a la inexistencia de controversias de hechos, los tribunales de instancia deben considerar todos los documentos que consten en el expediente, sean parte o no de la moción de sentencia sumaria o de la oposición a ésta. *Véase* <u>Vera Morales v. Bravo Colón</u>, *supra*; <u>Jusino et al. v. Walgreens</u>, 151 D.P.R. 560 (2001); <u>Cuadrado Lugo v. Santiago Rodríguez</u>, 126 D.P.R. 272 (1990).

Del texto de la regla y de nuestras expresiones en el pasado sobre este asunto se desprende que el tribunal de instancia no puede dictar sentencia sumaria cuando existan hechos materiales y esenciales en controversia; haya alegaciones afirmativas en la demanda que no se hayan refutado; surja de los propios documentos que se acompañan con la moción que hay una controversia real sobre algún hecho material y esencial; o que como cuestión de derecho no proceda lo solicitado. <u>Vera Morales v. Bravo Colón</u>, supra; <u>Luan Invest. v. Rexach Const. Co.</u>, 152 D.P.R. 562 (2000). Por último, si hay dudas sobre la existencia de una controversia de hechos, la moción de sentencia sumaria debe resolverse en contra de la parte que solicita la sentencia sumaria. De este modo, se evita despojar a una de las partes de su derecho a tener su día en corte, uno de los principios elementales del debido proceso de ley. <u>Vélez Lebrón v. García Passalacqua</u>, 2004 T.S.P.R. 169.[20]

---

[20] Hemos explicado también que el objetivo principal de la Regla 36.3 es propiciar la solución justa, rápida y económica de pleitos civiles que no presentan una controversia sustancial de hechos y para los cuales no es necesaria la celebración de un juicio en su fondo. <u>Vera Morales v. Bravo Colón,</u> 2004 T.S.P.R. 30; <u>Neca Mortg. Corp. v. A & W Dev. S.E.</u>, 137 D.P.R. 860 (1995).

El expediente de este caso revela que los demandantes pueden estar esbozando reclamos permitidos aun bajo la normativa que elabora la Opinión de conformidad. Las siguientes expresiones lo evidencian:[21]

> P. ... en ese mismo instante del despido, ustedes, usted personalmente sabía que el despido era discriminatorio.
> R. Sí. Claro, veníamos sufriendo ya porque los movimientos que estaba haciendo el Hospital Dr. Susoni hacían un taller de trabajo un poco complicado para mi esposa. Y ella pues, llegaba a casa ansiosa y a contarme la situación que estaba afrontando en el trabajo.
> P. ¿Usted entiende que también a raíz de ese discrimen?
> R. Perdóneme.
> P. O sea, que le imponían ese taller de trabajo difícil por el mismo ánimo discriminatorio, ¿eso es lo qué me está indicando?
> R. Sí, porque le estaban solicitando la renuncia, le estaban solicitando la renuncia.
> P. ¿Antes de despedirla?

Con planteamientos como los que anteceden en el expediente, relativos a actos específicos del patrono y no únicamente al discrimen laboral alegado, este Tribunal no debió desestimar la demanda de los recurridos.

IV

Por todo lo anterior, disiento de la adjudicación del presente caso. Entiendo que los tribunales de Puerto Rico tienen jurisdicción para juzgar la demanda en daños de los familiares de un empleado que ha transigido sus reclamaciones por alegados actos discriminatorios de su patrono ante la Junta Nacional de Relaciones de Trabajo, aun cuando los daños sean consecuencia de los mismos hechos alegados en la reclamación laboral. Sin embargo, aun determinándose lo contrario, la reclamación de los recurridos puede estar dentro de los parámetros que el propio Tribunal Supremo federal ha establecido para que los tribunales estatales

---

[21] Véase escolio 4.

puedan ejercer su jurisdicción. Por eso también, no procede la desestimación del caso.

En conclusión, confirmaría las actuaciones del Tribunal de Primera Instancia y del Tribunal de Apelaciones, y devolvería el caso al foro de instancia para que se continúen los procedimientos.

Liana Fiol Matta
Jueza Asociada
